## STATE v. AZOR BUTLER.

(Filed 29 March, 1967.)

**1. Conspiracy § 3—**

Criminal conspiracy is the unlawful agreement of two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means, and the agreement and not the consummation of the agreement is the offense.

**2. Conspiracy § 5—**

In a prosecution for criminal conspiracy the acts and declarations of each conspirator in furtherance of the common design are competent against all.

**3. Conspiracy § 6—**

A conspiracy may be proven by circumstantial evidence.

**4. Social Security and Public Welfare—   Evidence of conspiracy to defraud Welfare Department held sufficient to be submitted to jury.**

Evidence that a welfare recipient was advised that it was his responsibility to inform the Department of any change of address, that while he was living with relatives he was imprisoned, that during imprisonment he advised one of his relatives to continue cashing his welfare checks and to spend some of the money for designated purposes and save the rest for the recipient, that upon the visit of a welfare agent to the recipient's home the wife of the recipient's cousin advised the agent that the recipient was on a visit, and that pursuant to the recipient's instructions, recipient's cousin cashed the checks, *is held* sufficient to be submitted to the jury in a prosecution of recipient and his relatives for conspiracy to defraud the Welfare Department. G.S. 108-73.2(d).

**5. Criminal Law § 162—**

Defendant's objection to testimony of a witness which included a conclusion of the witness was sustained by the court as to the conclusion. *Held:* Since the conclusion related to a subordinate matter and the objection thereto was sustained, there was no substantial prejudice to defendant.

**6. Criminal Law § 107—**

The act of the court in reading the statute upon which the indictment was based and pointing out the material parts which applied to the charge against the defendants cannot be held erroneous as amounting to a peremptory instruction of guilt, since such instruction constituted a mere discharge of the court's duty to declare and explain the law of the case. G.S. 1-180.

**7. Criminal Law § 112—**

A misstatement of the contentions of the parties must be brought to the court's attention in apt time in order for an exception to be considered.

APPEAL by defendant from *Parker, J.,* at October 1966 Term of SAMPSON County Superior Court.

Azor Butler, Lugenia Butler and Carl Butler were charged in the following bill of indictment with conspiring to defraud the Welfare Department of Sampson County in violation of G.S. 108-73.12d:

"The jurors for the State upon their oath present, That Azor Butler, Lugenia Butler and Carl Butler, late of the County of Sampson beginning on the 1st day of February, 1965, in the year of our Lord one thousand nine hundred and sixty-five, through May, 1966, with force and arms, at and in the County aforesaid, that Azor Butler has been a welfare recipient from the Welfare Department of Sampson County since October, 1954; that during the year 1957, Azor Butler started residing in the home of Paul and Lugenia Butler and their son, Carl Butler, and continued to receive welfare assist-ance monthly from the Welfare Department of Sampson County; that at the January term, 1965, of the Superior Court of Sampson County, the said Azor Butler was sentenced to prison; that the Sampson County Welfare Department had no notice or knowledge that Azor Butler was no longer residing in the home of Paul and Lugenia Butler, and had been sentenced to prison; that during the time the said Azor Butler was serving his prison term, the Sampson County Welfare Department continued to mail checks monthly to Azor Butler which said checks went to the home of Paul and Lugenia Butler; that Azor Butler did unlawfully and wilfully fail to inform the Sampson County Welfare Department that he was no longer residing in the home of Paul and Lugenia Butler, but was serving his prison sentence; that the said Azor Butler had been advised by employees of the Sampson County Welfare Department that any time his address changed or he moved from Sampson County, that it was his responsibility to notify the said Welfare Department of such change; that the said Azor Butler, Lugenia Butler and Carl Butler did unlawfully, wilfully and fraudulently plan, conspire and confederate, each with the other, to cheat and defraud the Sampson County Welfare Department by failing to notify said Welfare Department that Azor Butler was no longer in Sampson County, and was serving a prison term, and did unlawfully, wilfully and fraudulently receive and accept the monthly checks mailed to Azor Butler for welfare assistance, they knowing at the time that the said Azor Butler was not entitled to receive said welfare funds, and did unlawfully, wilfully and fraudulently in further-ance of said conspiracy endorse the name of Azor Butler and cash the said monthly checks in the amount of $40.00 each payable to Azor Butler, beginning with the February, 1965, check and each monthly check thereafter through and including the May, 1966, check, all of said checks being in the sum of $40.00 each, with the

fraudulent intent to cheat and defraud the Sampson County Welfare Department, and did unlawfully, wilfully and . fraudulently cheat and defraud the said Sampson County Welfare Department out of the sum of $40.00 per month beginning with the month of February, 1965, and continuing through the month of May, 1966, against the form of the statute in such case made and provided and against the peace and dignity of the State."

The State offered through three employees with the Welfare Department evidence that Azor had been told that he should notify the department of any change in his address; that he failed to do so, and that they had no knowledge of his imprisonment until after his release. The checks were mailed to him monthly and were endorsed and cashed; that Carl Butler in the presence of Azor Butler admitted that he had cashed fourteen of the checks of $40 each; and that his father, Paul Butler, who was dead at the time Carl made this statement, had cashed one of them. In June 1965, while Azor Butler was in prison, Miss Carol Reaves of the Welfare Department went to the home of Lugenia Butler in connection with the payments to Azor Butler. She asked Lugenia Butler if Azor Butler was residing in the home, or where he was at this time. The reply was: "Well, he is in Fuquay Springs visiting relatives and has been there a week." Azor Butler had been living for many years at the home of Paul Butler, who was his first cousin. Lugenia Butler was Paul's wife, and they were the parents of Carl Butler. Carl testified that when the first check came in after Azor Butler had gone to prison he and his father went to the prison to see Azor. They took the check with them and told Azor it had come and asked him if it were still supposed to come while he was in prison. He said that Azor told them to cash the check and save the money, and when he (Azor) would need some, to send it to him when he asked for it. Azor Butler told Paul to cash the first check and leave some money in the office for him. He said Azor told him to cash the other checks, which he did, and would mail money to Azor from time to time while he was in prison. Carl Butler further testified that after his father had been sick about two months he went to see Azor Butler again and told him about his father's condition, and that Azor said: "Your father helped me along when I was sick, so when he is sick use some of the money to help his medical bills and doctor's bills"; that when his father died in December, 1965, Azor Butler got out of prison and came to the funeral, at which time Carl gave him some money. He said when the warrant was taken out he had $200 of Azor's money on hand. He said he did not know it was wrong to cash the checks and did not find it out until

the warrant was issued. He said his mother did not cash any of the checks or get any of the money.

Azor Butler testified that he did not understand that the checks were supposed to stop when he went to prison, and that this had not been explained to him; that he went only to the second grade, and cannot read or write; that if he had known he would have notified the Welfare Department. He corroborated Carl's evidence to the effect that he had told Carl to cash the checks and save the money for him; and that he had told Carl to use some of the money for Paul Butler's medicine and doctor; that he told him if he needed it to just use it and replace it back whenever he got straightened out. He further said he told the Welfare authorities that he had had Carl Butler to cash the checks and save the money for him.

Lugenia Butler testified that she had nothing to do with cashing the checks or any knowledge that the checks were being cashed; that she heard Carl say that Azor Butler had told him to cash the checks and to use some of it if needed; and that Azor had said to use some of the money to help pay her husband's expenses.

The jury returned a verdict of guilty as to all three defendants upon the charge of conspiracy as contained in the bill of indictment. The court imposed suspended sentences as to Carl and Lugenia Butler, who did not appeal. Azor Butler was given an active sentence of two years, and from it he appealed to this Court.

*Attorney General T. W. Bruton, Staff Attorney Wilson B. Partin for the State.*

*Clifton W. Paderick for defendant appellant.*

PLESS, J. G.S. 108-73.12d provides, in pertinent part, "Whoever knowingly obtains * * * continuation of assistance * * * when such person is ineligible and not entitled to such assistance * * * by means of failing to disclose a material fact * * * or whoever * * * aids and abets any person to * * * a continuation of assistance * * * when such person is ineligible and not entitled to such assistance * * * by failing to disclose a material fact or by any fraudulent scheme, plan, device, or impersonation shall be guilty of a misdemeanor * * *."

The defendants were charged with conspiring to violate this statute.

In *S. v. Shipman,* 202 N.C. 518, 163 S.E. 657, the Court succinctly states the law of conspiracy: "The gist of a criminal conspiracy is the unlawful concurrence of two or more persons in a wicked scheme — the agreement to do an unlawful act or to do a

lawful act in an unlawful way or by unlawful means — and it is said that the crime is complete without any overt act having been done to carry out the agreement * * * the consummation of the agreement without any overt act constitutes or may constitute the agreement: If two or more persons conspire to do a wrong, this conspiracy is an act 'rendering the transaction a crime,' without any step taken in pursuance of the conspiracy. * * * One who enters into a criminal conspiracy, like one who participates in a lynching, or joins a mob to accomplish some unlawful purpose, forfeits his independence and jeopardizes his liberty, for, by agreeing with another or others to do an unlawful thing, he thereby places his safety and security in the hands of every member of the conspiracy. The acts and declarations of each conspirator, done or uttered in furtherance of the common, illegal design, are admissible in evidence against all. 'Every one who enters into a common purpose or design is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others, in furtherance of such common design.' * * * But to make the acts and declarations of one person those of another, or to allow them to operate against another or others, it must appear that there was a common interest or purpose between them and that said acts were done, or said declarations uttered, in furtherance of the common design, or in execution of the conspiracy."

A conspiracy may be proven by circumstantial evidence. "The existence of the unlawful agreement need not be proven by direct testimony. It may be inferred from other facts, and the conditions and circumstances surrounding. 11 Am. Jur. 548, 570. 'The results accomplished, the divergence of those results from the course which would ordinarily be expected, the situation of the parties and their antecedent relations to each other, together with the surrounding circumstances, and the inferences legitimately deducible therefrom, furnish, in the absence of direct proof, and often in the teeth of positive testimony to the contrary, ample ground for concluding that a conspiracy exists.'" *S. v. Andrews,* 216 N.C. 574, at 577, 6 S.E. 2d 35.

Considering the State's evidence in the strongest light, it shows that Azor Butler had been told by Mrs. Grace Vann of the Sampson County Welfare Department that: "If there was a change at all in his situation that he was to report it; that is, if he moved his domicile anywhere that was to be reported." While we are considering only the case as to Azor Butler, since Lugenia and Carl Butler did not appeal, the evidence shows a guilty knowledge on the part of Lugenia in that while Azor was in prison she told Miss Carol Reaves

in response to her question as to whether Azor was residing in the home, or where he was, "He is in Fuquay Springs visiting relatives, and has been for a week."

Carl Butler said that when the first check came after Azor had gone to prison, Lugenia Butler and his father had gone to see Azor and asked him if the money was still supposed to come; that Azor said to cash the checks, save the money, and send it to him (Azor) when he asked for it. Later, when Carl's father had become ill, Carl again went to see Azor who told him to use some of the money to help pay his father's bills for his sickness. Azor, himself, corroborated Carl in the above statements.

While all the defendants denied knowing that it was wrong to cash the checks, the evidence quoted above is ample to be submitted to the jury and to permit a finding by the jury that the three knew that cashing the checks and using the money was a violation.

Several of the exceptions noted by the defendant are more applicable to the defendants who did not appeal than to Azor. Those that justified consideration on behalf of Azor are as follows: Mrs. Roy Gunter of the Welfare Department testified that after she had learned that the checks had been cashed while Azor was in prison, "I came back to my office and went over the record carefully, etc., and got our manual out and reviewed the policy with regard to recipient fraud. We have a policy in the public assistance manual which refers to what we call recipient fraud. And I reviewed the record carefully and it seemed to me there had been some evidence of violation." Upon objection by the defendant, the Court sustained it "as to any conclusions". We are of the opinion that the subject of these exceptions constituted no substantial prejudice as to the defendant, and they are not sustained.

In the charge the Judge read the statute upon which the indictment was based and then pointed out the material parts which applied to the charge against the defendants. The defendant contends that this amounted to a peremptory instruction of guilt as to at least one of the defendants and constituted error. This instruction was in keeping with the requirements of G.S. 1-180 which makes it the duty of the Judge to declare and explain the law of the case.

The defendant further excepts to the failure of the Court to refer to Azor Butler's illiteracy in his charge; to the Court's failure to define "concealment", and to the statement of contentions on behalf of the State. However, none of these matters were called to the attention of the Court at the time and the defendant did not request additional contentions or statements of the law. "If the defendants desired fuller or more specific instructions than those given in the

general charge, they should have asked for them, and not waited until the verdict had gone against them. *Simmons v. Davenport,* 140 N.C. 407, and if their contentions were not properly stated, the defendants should have called the attention of the court to any omissions or errors, so that they could have been supplied or corrected. *Mfg. Co. v. Building Co.,* 177 N.C. 103." *Sherrill v. Hood, Comr. of Banks,* 208 N.C. 472, 181 S.E. 330.

A careful perusal of the charge discloses that the evidence and contentions of the defendant were fairly and sufficiently stated and we find no part which constitutes error.

Upon consideration of all exceptions and authorities cited on behalf of the defendant, we are of the opinion that the evidence of his guilt supports the verdict, and that he has had a fair trial in which there was

No error.