STATE OF NORTH CAROLINA v. ROGER ALLEN CARON

No. 7510SC211

(Filed 2 July 1975)

Arson § 4— *setting fire to paint and body shop* — sufficiency of evidence

In a prosecution for feloniously setting fire to a building used as a business, evidence was sufficient to be submitted to the jury where it tended to show that the building burned housed a body and paint shop operated by defendant, the fire was caused by someone setting fire to lacquer thinner, defendant who was summoned to the scene had smut on his clothes, face and hands, and insurance policies on the building and contents were in defendant's name.

APPEAL by defendant from *Godwin, Judge*. Judgment entered 20 November 1974 in Superior Court, WAKE County. Heard in the Court of Appeals 13 May 1975.

Defendant was tried on a charge of feloniously setting fire to a building used as a business. The building housed a body

and paint shop operated by defendant and was unoccupied at the time of the fire. He was found guilty and judgment imposing an active prison sentence was entered.

*Attorney General Edmisten, by Associate Attorney Robert R. Reilly, for the State.*

*William A. Smith, Jr., for defendant appellant.*

VAUGHN, Judge.

Defendant contends that the evidence was insufficient to take the case to the jury. The State's evidence, in part, tended to show the following.

On 22 January 1974 at 4:01 a.m., Raleigh Fire Chief S. J. Talton participated in responding to a fire at Caron Body Shop located at 705 North Person Street behind Mordecai Florist. Chief Talton and other firemen arrived at the building at 4:04 a.m. and proceeded to extinguish the fire.

Talton then entered the building and immediately sensed the heavy odor of lacquer thinner. He examined the building and (on cross-examination) said he estimated that the fire began 45 minutes to an hour before his arrival. He diagnosed the blaze as a "flash over" fire, a very hot fire which will not burn long because it lacks the necessary oxygen for the amount of fuel in the building.

Without objection Talton further testified as follows. The fire started in the northeast corner of the building and flashed across to the southwest corner. The second window from the northeast corner of the building had been broken and the glass had fallen on the inside of the building. The floor sloped downward from the northeast corner to the southwest corner, there being a drop of some three to four inches from the center of the building to the southwest corner. A 55 gallon drum containing lacquer thinner was found on the floor in the center of the building and was approximately one-third full. The right leg of the stand supporting the drum was broken and marks were on the leg. The drum was on its side with the spout on the face of the drum so situated that it did not touch the floor. The spout was ruptured where it screwed into the barrel and was dented on the left side. There was so much lacquer thinner on the floor that it had to be washed out.

The floor was dirty except there was a clean area about a foot and a half wide where there had been a swirling fire, apparently the result of burned off lacquer thinner. This clean area was in the form of a trail leading from the door back to the drum and from the door over to the window. It circled around the window, went between the cars in the shop and came back to the door. The floor area around the 55 gallon drum was also clean. There was evidence of trash on other areas of the floor.

Talton further testified that "a person would be dead if he stood inside and set the fire. He could not have survived the explosion."

Defendant was called at his home to notify him of the fire and he arrived at the scene some thirty minutes later. Talton testified:

"When I saw him, I had reason to believe that the fire had been intentionally set. When Mr. Caron drove up, he was dirty which is natural for a working man, but he was smutty looking and had soot coming out of the corner of his nose and up and around about a half inch over his nose. I noticed smut on his clothes, on his face and hands. He was dressed in work clothes. It was not a clean uniform. I am sure that I saw the smut and not grease or oil."

Defendant gave statements to Officer R. B. Tant on two separate occasions. Tant got the first statement from defendant on the afternoon of 23 January 1974 as part of his normal investigation of the fire. Defendant was not a suspect at this time, but was interviewed because he operated the body shop. Defendant told Tant that he had two insurance policies on his business—a $20,000.00 policy on contents in the building and a $5,000.00 policy covering up to five vehicles inside the building. Defendant added that on the night of the fire he had left the building at approximately 7:10 p.m. on 21 January 1974 and named several persons who were at the building at the time he left. Defendant told the officer, "I can't explain why there was any soot on my face when I got back to the fire."

On the evening of 23 January, defendant called Officer Tant, informed him that his earlier statement was not correct and said that he wished to correct the statement. Tant set up an appointment at the police station for the afternoon of 25 January. Defendant told Tart that on the night of the fire he had

returned to the body shop following the late movie on television and had stayed there for about thirty minutes. The only work he did while there was to empty the trash. Defendant estimated that he left the shop about 2:30 a.m., stopped at a coffee shop and returned to his home at about 3:00 a.m.

At the time of the fire the body shop was operated by defendant and the insurance policies, effective 25 April 1973, were in defendant's name, doing business as Roger A. Caron Body Shop. On 9 August 1973 defendant formed a partnership with Charles Edward Caudle and the insurance policies were placed in the name of both men, Caron and Caudle, doing business as "C and C Body Shop." On 3 January 1974, following some disagreement between Caron and Caudle, the policies were placed back in defendant's name, doing business as Caron Body Shop. At this time the amount of fire insurance was increased from $8,000.00 to $20,000.00. Caudle was not told of the changes in the insurance. Following several disagreements between Caudle and defendant it was agreed that Caudle would leave the business. He was supposed to have left during the week that the fire occurred. Caudle's personal boat was in the building at the time of the fire and was destroyed.

Caudle testified that Caron purchased a 55 gallon drum of lacquer thinner on the day before the fire. He built a stand and placed the drum on it. At the time there was another 55 gallon drum of lacquer thinner in the building which had approximately 30 gallons left in it after three to four months of use.

Defendant offered evidence that his wife had loaned him the money to finance his business. Defendant was habitually dirty because of the nature of his job in the body shop, there was a shortage of lacquer thinner at the time defendant purchased the 55 gallon drum of thinner, and that defendant's change of insurance was initiated through a recommendation of a bookkeeper in his accountant office. Defendant did not testify.

When the evidence is considered in the light most favorable to the State it is sufficient to take the case to the jury on every element of the offense charged. The structure that was burned falls within the definition of the statute. The evidence of the incendiary origin of the fire and that it was started by defendant is substantial. Defendant's motion for nonsuit was properly overruled.

Defendant's other assignment of error is that the court erred in that portion of the charge to the jury to the effect that defendant's failure to testify was not to be considered against him. The instruction was not requested by defendant. Our Supreme Court has repeatedly said that, in the absence of a request, it is the better practice to give no instruction concerning the failure of defendant to testify. The court has also said many times that if the instruction is given, the judge should use the language employed in the statute. Although we do not approve the form of the instruction given in this case, it does not constitute prejudicial error and require a new trial.

We find no prejudicial error in defendant's trial.

No error.

Judges BRITT and PARKER concur.