STATE OF NORTH CAROLINA v. HERBERT A. SMITH, JR. AND BILLY A. GARRIS

No. 7726SC428

(Filed 21 December 1977)

1. **Arson § 4.1— burning of building housing business—sufficiency of evidence**

    Evidence was sufficient to take the case to the jury on the charges of unlawful burning where it tended to show that defendants tried to recruit one of their employees to burn the building which housed their business; they acquired a large quantity of lacquer thinner that was not at the time needed for any legitimate purpose; on the day of the fire they moved the lacquer thinner from where it had been stored to the area where the damage from the fire was concentrated; the drum of thinner was turned over and the spigot was loosened; a tenant of the building was made to move on the day of the fire because, as one defendant told him, the building was "going up"; defendants gave the employee they had tried to recruit for the burning the day off; less than an hour before the fire was started one defendant called the employee and asked if he had an alibi because things were ready to "go down"; and, based upon his professional examination of the crime scene, an expert in the field of arson investigation was of the opinion that the fire was intentionally set.

2. **Arson § 3— fire of incendiary origin—admissibility of expert opinion**

    An expert in arson investigation was properly allowed to give his opinion that a fire was of incendiary origin where the opinion was based on the ex-

pert's own examination of the premises and was based on a proper hypothetical question supported by the evidence.

**3. Conspiracy § 6— conspiracy to burn building—sufficiency of evidence**

Evidence was sufficient for the jury in a prosecution for conspiracy to burn a building used in trade and manufacturing where it tended to show that defendants were in business together; their company was having financial difficulty; they placed an $80,000 fire insurance policy on the property two months before the fire; defendants attempted to hire one of their employees to start the fire; and defendants communicated with the employee several times about the fire.

**4. Conspiracy § 5.1— extrajudicial statements of coconspirators—admissibility**

In a prosecution for conspiracy to burn and burning a building used in trade and manufacturing, the trial court properly allowed into evidence extrajudicial statements of the alleged coconspirators against each other, since the State offered evidence tending to show the existence of the conspiracy, and the witness's testimony related acts and declarations of the defendants in furtherance of the common design after it was formed and before it ended.

APPEAL by defendants from *Grist, Judge.* Judgments entered 3 February 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 24 October 1977.

Defendants were indicted for conspiracy to burn and burning a building used in trade and manufacturing. The building was occupied by Golden Bear Manufacturing and Machine, Inc., a company owned by defendants.

The State offered evidence tending to show the following. Donald Greene worked for defendants' corporation as a machinist. Three or four weeks before 19 April 1976, the day of the fire, defendant Garris told Greene that the company was having financial problems and offered Greene $500 to set fire to the building. Two or three days later Greene had a "round table" discussion with both defendants about burning the building. Defendant Smith offered Greene $1,000 to burn the building. Defendants had normally kept two or three gallons of lacquer thinner. About two weeks before the fire, a 55-gallon container of lacquer thinner was acquired and stored at the rear of the building. At about the same time Garris told Greene that they had to hurry and get the fire started because the financial losses would begin to show up in the company books. During the next week or so there were discussions off and on about how to start the fire. During the two weeks before the fire Garris would occasionally slap a hammer on the

table and make a loud noise and would make noises like "ka-boom" and smile and make gestures "like the place blew up." On the day of the fire Greene and Garris moved a drum of kerosene and a drum of lacquer thinner to the front of the building near the toolroom. On instructions from Garris, Greene put a brass spigot in the lacquer thinner. After lunch Garris told Greene that Greene could be off for the rest of the day. That afternoon Greene helped Jimmie Long, who rented office space from defendants, move some equipment out of the building to another location. Smith told Long to get his "stuff out because she was going up." About 5:00 p.m. defendant Smith called Greene and told Greene that things were getting ready to "go down" and asked Greene if Greene had an alibi. Around 6:00 p.m. Greene saw the building on fire on the television news.

On 19 April 1976, around 5:45 p.m., Jerry Sides and a number of other firemen went to the scene while the fire was in progress. In the process of fighting the fire, they observed that the most severe part of the fire was in the front left part of the building in the area of the shirt room and toolroom.

Allen Blackwelder was an inspector-investigator with the Charlotte Fire Department. On 19 April 1976, he went to the scene at about 6:30 p.m. He observed that the greatest concentration of fire was between the shirt room and the toolroom. Directly outside the shirt room there were two 55-gallon drums sitting horizontally and a third drum sitting vertically. Both horizontal drums had spigots inserted in the end, and one of the spigots was hanging free. One of the spigots was removed with a pair of channel locks and turned over to the crime laboratory. Tony Aldridge, a chemist with the Charlotte-Mecklenburg Crime Laboratory, went to the scene the day after the fire. In the area of the shirt room, he detected a heavy concentration of an aromatic chemical product in the air. Nearby on the floor he detected a large deposit of a liquid with the same odor as the vapors in the air. He later performed an analysis of the liquid on the floor as well as an analysis of the contents of one of the 55-gallon drums and determined that both were composed of toluene, generally called lacquer thinner. E. C. Johnson, an expert in the field of toolmark identification, examined the spigot and determined that marks thereon were made by a hard, semi-smooth tool. Charles Lane, an expert in the field of arson and fire investigation, formed an opin-

ion based upon his observations inside the building that the point of origin of the fire was the area outside the toolroom. In addition, based on his observations, he formed the opinion that the fire was incendiary in origin.

In February before the fire in April, defendants placed an $80,000 fire insurance policy on the property. In February, defendants also placed third mortgages on their homes to obtain funds to be used in the business.

Each defendant was found guilty as charged and sentenced to prison for terms of not less than five nor more than eight years.

*Attorney General Edmisten, by Associate Attorney Patricia Hodulik, for the State.*

*W. Faison Barnes, for defendant appellants.*

VAUGHN, Judge.

[1] Defendants contend that the court erred in failing to grant their motions for nonsuit on the charges of unlawful burning. Defendants correctly argue that the burden was on the State to prove (1) the fire, (2) that it was of incendiary origin, and (3) the connection of the accused with the crime. *State v. Cuthrell*, 233 N.C. 274, 63 S.E. 2d 549 (1951). They primarily argue that the State failed to show that the fire was of incendiary origin.

The State is, of course, entitled to every favorable inference that arises from the evidence, direct or circumstantial. The evidence was sufficient to permit the jury to find that defendants decided to burn their business to collect the proceeds from the fire insurance policy. They tried to recruit Greene to start the fire. They acquired a large quantity of lacquer thinner that was not then needed for any legitimate purpose. On the day of the fire, they moved the lacquer thinner from where it had been stored to the area where the damage from the fire was concentrated. The drum was turned over, and the spigot was loosened. The tenant, Long, was made to move on the day of the fire because, as defendant Smith told him, the building was "going up." They gave the employee Greene the afternoon off. Less than an hour before the fire was started, Smith called Greene and asked if he had an alibi because things were ready to "go down."

Based upon his professional examination of the crime scene, about which he testified in considerable detail, Lane, an expert in the field of arson investigation, was of the opinion that the fire was intentionally set. We conclude that the evidence, taken in the light most favorable to the State, was sufficient to take the case to the jury on the charges of unlawful burning. *State v. Moore*, 262 N.C. 431, 137 S.E. 2d 812 (1964); *State v. Clark*, 173 N.C. 739, 91 S.E. 372 (1917); *State v. Caron*, 26 N.C. App. 456, 215 S.E. 2d 878 (1975), *aff'd.*, 288 N.C. 467, 219 S.E. 2d 68, *cert. den.*, 425 U.S. 971. In summary, we will repeat what was said in *State v. Moses*, 207 N.C. 139, 141, 176 S.E. 267, 268 (1934):

> "The State's evidence in this case is sufficient to establish a motive and an opportunity for the defendant to commit the crime, that the fire was of an incendiary origin, and many other damaging circumstances tending to show defendant's guilt. However, it is not the fact of motive, or of opportunity, or of incendiary origin of fire, or of any other single circumstance taken by itself, but it was all of these circumstances, considered as a whole and in their relation to each other, that made it incumbent upon the court to submit this case to the jury. These related circumstances likewise warranted the jury in deciding the issue against the defendant. *S. v. Clark*, 173 N.C., 739.
>
> When each circumstance going to make up the evidence relied upon depends upon the truth of the preceding circumstance, circumstantial evidence may be likened unto a chain, which is no stronger than its weakest link; but, as in this case, when there is an accumulation of circumstances which do not depend upon each other, circumstantial evidence is more aptly likened to the bundle of twigs in the fable, or to several strands twisted into a rope, becoming, when united, of much strength."

[2] Defendants contend that it was error to allow the arson expert, Lane, to state that, in his opinion, the fire was of incendiary origin. We must overrule the exception. The opinion was based on the expert's own examination of the premises. He testified in detail about what he found and the basis for his opinion. The only pertinent fact about which the witness had no personal knowledge was the location of the drum of lacquer thinner im-

mediately after the fire. That fact, which was brought out by other testimony, was made a part of the hypothetical question. Unlike the witnesses in *Keith v. Gas Co.*, 266 N.C. 119, 146 S.E. 2d 7 (1966), Lane did not base his opinion on an hypothesis not supported by any evidence. The expert was properly allowed to give his opinion. *State v. Moore, supra; State v. Reavis*, 19 N.C. App. 497, 199 S.E. 2d 139 (1973).

[3] Defendants contend that their motions for nonsuit on the conspiracy charges should have been allowed. The question is, therefore, whether there is evidence from which the jury could infer that defendants unlawfully concurred in an agreement to do an unlawful act. *State v. Butler*, 269 N.C. 733, 153 S.E. 2d 477 (1967). The evidence, as previously discussed, clearly supports the inference that there was a union of wills between Smith and Garris to burn the property. The evidence here is clear and direct. Generally, a conspiracy must be proven by a number of indefinite acts which, standing alone, mean little but when put together permit an inference that a conspiracy had been formed. *State v. Puryear*, 30 N.C. App. 719, 228 S.E. 2d 536 (1976), *cert. den.*, 291 N.C. 325, 230 S.E. 2d 678. Closely related to the assignment of error on the nonsuit question are defendants' exceptions relating to the admission of extrajudicial statements of the alleged co-conspirators against each other. We first note that counsel on appeal did not represent defendants at trial and that objections to most of the testimony were not taken at trial or, if taken, were waived by the admission of testimony of similar import. Evidence so admitted is not the proper subject for assignment of error on appeal. *State v. Lowery*, 286 N.C. 698, 213 S.E. 2d 255 (1975), *mod.*, 428 U.S. 902. We have, nevertheless, reviewed the appropriate assignments of error and find them without merit. Generally they relate to statements made to Greene by one defendant when he was not in the presence of the other. One who joins in a conspiracy places his security in the hands of every other member of the conspiracy. The acts and declarations of each conspirator in furtherance of the common illegal plan are admissible against all. *State v. Butler, supra.*

[4] It is true, of course, that there must be proof of the conspiracy if declarations of co-conspirators are to be admitted. "Consideration of the acts or declarations of one as evidence against the co-conspirators should be conditioned upon a finding: (1) a con-

spiracy existed; (2) the acts or declarations were made by a party to it and in pursuance of its objectives; and (3) while it was active, that is, after it was formed and before it ended. [sic]" *State v. Conrad*, 275 N.C. 342, 348, 168 S.E. 2d 39, 43 (1969). Because of the very nature of the offense, the courts recognize the difficulty in proving the formation and execution of the plan and allow wide latitude in the order in which the pertinent facts are offered into evidence. If at the close of the evidence "every constituent of the offense charged is proved, the verdict rested thereon will not be disturbed." *State v. Thomas*, 244 N.C. 212, 214, 93 S.E. 2d 63, 65 (1956). Here the State offered evidence tending to show the existence of the conspiracy. Greene's testimony related acts and declarations of the defendants in furtherance of the common design after it was formed and before it ended. Greene also testified as to his own acts and declarations in the presence of one or more of the conspirators. The testimony was properly admitted.

Defendants' able counsel on appeal has brought forward other assignments of error. We have carefully considered them and conclude that they fail to disclose prejudicial error at trial.

No error.

Judges MORRIS and CLARK concur.