State v. Culpepper

STATE OF NORTH CAROLINA v. RANDY ANSON CULPEPPER and TREVOR DALE GURGANUS

No. 801SC132

(Filed 15 July 1980)

**Criminal Law § 50.1– opinion testimony – witness's knowledge of facts not shown – no proper hypothetical question**

    In a prosecution of defendants for conspiring to burn a building and personal property therein with intent to prejudice the insurer, the trial court properly excluded a witness's testimony as to his opinion that the char pattern on the floor of the second story of the building did not indicate the use of an accelerant and that there was only one origin to the fire for the reason that defendants failed to demonstrate the witness's personal knowledge of essential facts, and defendants did not ask the witness's opinion in response to a hypothetical question which included the essential facts to be assumed.

APPEAL by defendants from *Brown, Judge.* Judgments entered 12 June 1979 in Superior Court, PASQUOTANK County. Heard in the Court of Appeals on 9 June 1980.

State v. Culpepper

Defendants were indicted on two counts of conspiring with each other to burn a building in which a nightclub and tavern establishment was located, and for conspiring to burn the personal property located therein with the intent to prejudice the insurer of said property. Defendants were also indicted on two counts each of the substantive offenses of burning a building and burning personal property.

Defendants were found guilty as charged on all counts.

From judgments imposing prison sentences of not less than nor more than 15 years on the count which charged burning of a building, 5 years on the count which charged burning of personal property, and 2 years on the counts which charged conspiracy to burn a building and conspiracy to burn personal property, each defendant appealed.

*Attorney General Edmisten, by Special Deputy Attorney General John R.B. Matthis and Assistant Attorney General Acie L. Ward, for the State.*

*Twiford, Trimpi, Thompson & Derrick, by C. Everett Thompson, for defendant appellants.*

HEDRICK, Judge.

Although the record in these cases contains 573 pages in two volumes, and 44 assignments of error based on 147 exceptions, defendants have brought forward and argued in their brief only six assignments of error, all of which relate to the exclusion of testimony.

First, defendants argue that the trial judge erred in not allowing their expert witness, Harley June, to give his opinion that "the charred floor on the second floor of the building" was not caused by the use of an "accelerant" and that there was but one point of origin to the fire. The State offered the testimony of three expert witnesses tending to show that the char pattern on the floor in question indicated the use of an accelerant and that there were three points of origin to the fire.

Expert testimony upon "practically any facet of human knowledge and experience" is admissible to aid the jury's understanding of the evidence provided (1) the witness is qualified as an expert in the field in question, *and* (2) the witness is qualified as an expert in the particular case based on personal knowledge gained from first-hand study of the aspects of the case for which his or her expert opinion is sought, or based on facts assumed in a properly framed hypothetical question. 1 Stansbury's N.C. Evidence, *Opinion* § 134 at 438 (Brandis rev. 1973). *See Teague v. Duke Power Co.*, 258 N.C. 759, 129 S.E. 2d 507 (1963). Applying this principle to the case before us, the witness was qualified as an expert in his field and indeed was tendered and apparently accepted as an expert in the "causes of fires." However, in our opinion, Judge Brown properly excluded this witness's testimony as to his opinion that the char pattern on the floor of the second story did not indicate the use of an accelerant and that there was only one origin to the fire for the reason that defendants failed to demonstrate the witness's personal knowledge of essential facts nor did defendants ask the witness's opinion in response to a hypothetical question which included the essential facts to be assumed. The witness did not examine the premises until 13 January 1979, some 97 days after the fire on 6 October 1978. While other witnesses testified as to the condition of the premises before the fire and, in particular, as to the fact that paint thinner had been stored on the second floor, the defendants failed to show that their expert possessed any personal knowledge concerning the location of the paint thinner, nor did they seek to elicit his opinion by asking him a hypothetical question which included this essential fact. *See State v. Smith*, 34 N.C. App. 671, 239 S.E. 2d 610 (1977). Additionally, defendants failed to lay a proper foundation for this witness's opinion either by offering evidence that the condition of the building as he observed it, and upon which he based his opinion, was substantially the same as it was immediately after the fire, nor was this essential fact contained in a properly framed hypothetical question. *See State v. Smith, supra; State v. Reavis*, 19 N.C. App. 497, 199 S.E. 2d 139 (1973); *State Highway Commission v. Matthis*, 2 N.C. App. 233, 163 S.E. 2d 35 (1968). Unless the witness demonstrates that he personally knows of or is hypothetically made familiar with those facts necessary for

him to form an opinion, then his opinion lacks probative value and is properly excluded.

Even assuming *arguendo,* however, that the challenged testimony was erroneously excluded, we perceive no prejudicial error thereby since defendants' second expert witness, Dr. Donald M. Oglesbe, whose credentials were impressive, testified in response to a properly framed hypothetical question which included all the essential facts that, in his opinion, the fire had only one point of origin and that no accelerant was poured on the second-story floor causing the char patterns described by Harley June and the State's experts. For these reasons, this assignment of error is not sustained.

Defendants next contend the trial court erred in not allowing the owner/lessor of the building in question to testify on cross-examination if he knew whether the building had a fire in it prior to the date of this fire. The record discloses that the witness was allowed to testify that he *knew* whether the building had had a fire in it, but it does not disclose that the witness was ever asked whether it in fact had had a fire. Thus, we cannot determine if the exclusion of the testimony was prejudicial. Nevertheless, the question called for clearly irrelevant testimony. This assignment of error is not sustained.

By assignment of error number 37, based on nine exceptions duly noted, defendants argue the court erred in "not allowing the defendant, Trevor Gurganus, to testify that the defendants had purchased beer through another nightclub operated by defendants and used these beer purchases in the Boardwalk nightclub," which was the establishment that burned. Again, assuming the relevancy of the excluded testimony, its exclusion was not prejudicial since almost identical evidence had been previously elicited from this same witness. This assignment of error is meritless.

Defendants' next assignment of error challenges a ruling of the trial court by which defendants contend testimony that there were no fires in the building after the date of the fire in question was erroneously excluded. To the contrary, the record reveals that this evidence, which defendants strenuously contend should have been admitted, was in fact admitted. That is,

State v. Culpepper

the witness did testify that there were no fires in the building to his knowledge after 6 October 1978. This assignment of error borders on the frivolous.

By assignment of error number 40, defendants assert the trial court erred in not allowing their expert, Harley June, to testify "as to the structural supports of the men's restroom and the significance of the char pattern on the supports." The two exceptions upon which this assignment of error is based indicate that the following testimony was stricken:

Q. State whether or not this support member was on top of or below the perpendicular support members that crossed it.

A. Well, it would be on top, the, the ceiling was fastened to a support member that would go like this (indicating) across and that (indicating). And, covered —

MR. TEAGUE: Motion to Strike what the ceiling was attached to.

SUSTAINED.

.   .   .

Q. Mr. June, you have just testified as to what in your opinion the significance of the burning pattern of the supports in the upper part of the men's room false ceiling was. Can you explain that answer please.

A. The upper cross members or support members showed heavy charring all the way around, side, bottom and top. The heavy charring was on the side and on the top. The lower supports directly underneath was [sic] heavy charred on the sides and on the top but was [sic] very well isolated or insulated by the paneling of the ceiling.

MR. TEAGUE: OBJECTION. MOTION TO STRIKE.

SUSTAINED. MOTION ALLOWED.

However, the record reveals that this witness testified in great detail concerning the structural supports and the char patterns on the supports, and with respect to the significance of the char pattern, the witness testified as follows, without objection, immediately upon the court's striking the last-quoted answer above:

> The significance of the char pattern is the heavy charring on the top and on the sides indicates extreme high heat from the top down and as the bottom is also charred, but not as heavily, there had to be fire from below, causing that charring.

Obviously, this is the answer which defendants sought to elicit by their questions, and they have no room to complain that the court struck the previous unresponsive answer. This assignment of error is patently without merit.

Finally, defendants contend the court erred in not setting aside the verdict. In their brief, they state that the basis for this assignment of error is "cited in the above assignments of error," that is, the defendants' motion to set aside the verdict was apparently bottomed on the alleged errors in evidentiary rulings which we have treated in this opinion. At any rate, that is the defendants' position on this appeal. Since we have found no error in the rulings challenged on appeal, *a fortiori* we find no error in the trial court's denial of the motion.

We hold the defendants had a fair trial free from prejudicial error.

No error.

Judges MARTIN (Robert M.) and MARTIN (Harry C.) concur.