STATE OF NORTH CAROLINA v. CHARLES STEVEN SHEETZ

No. 7921SC966

(Filed 20 May 1980)

1. **Searches and Seizures § 1; Process § 6— evidence secured by subpoena—no search and seizure**

     Evidence secured by subpoenas is not normally subject to the strictures of the Fourth Amendment.

2. **Process § 6; Searches and Seizures §§ 19, 25— court order as criminal investigation warrant—absence of probable cause**

     An order of the superior court, entered upon application of the district attorney, requiring defendant to present to the sheriff's department for examination all business and working records of a florist and gift shop which he owned was not a subpoena *duces tecum* but was a criminal investigative warrant, and probable cause was required for issuance of a valid warrant. The district attorney's affidavit did not state sufficient underlying circumstances from which the court could conclude that probable cause existed where it alleged that a sheriff's department investigation of a fire at defendant's florist and gift shop disclosed evidence of irregularities which, if shown to be true, would constitute serious violations of the law on the part of defendant, and defendant's motion to suppress the records or evidence from the records seized from him should have been allowed.

3. **Process § 6; Criminal Law § 84— court order as subpoena—evidence obtained in exploitation of prior illegal search**

     A court order directing defendant to produce and turn over to the S.B.I. the business and working records of his florist and gift shop was a subpoena,

and evidence obtained pursuant to the subpoena order should have been excluded in defendant's arson trial where it was obtained by exploitation of an earlier illegal search and seizure pursuant to a warrant not based on probable cause.

**4. Constitutional Law § 76; Process § 6— self-incrimination—business records and tax returns obtained by subpoena**

The State's use of business records obtained from defendant sole proprietor by subpoena in his trial for arson violated defendant's Fifth Amendment right against self-incrimination; however, the use of defendant's tax returns which had been prepared by someone else and obtained from defendant by subpoena did not violate his right against self-incrimination.

**5. Arson § 3— incendiary origin of fire—expert testimony**

An expert in arson investigation may properly give his opinion that a fire was of incendiary origin where his opinion is based on his own examination of the burned premises and on a proper hypothetical question supported by the evidence.

**6. Arson § 4.1— unlawful burning of building—sufficiency of evidence**

The State's evidence was sufficient for the jury in a prosecution for unlawfully burning a building used in carrying on a trade where the evidence tended to show: the fire occurred within five minutes after defendant closed his florist and gift shop; the premises were still secure when firemen arrived; the fire was not caused by electrical malfunction; an arson expert was of the opinion that the fire was of incendiary origin; an assistant fire marshal's report expressed the opinion that defendant started the fire by dumping an ash tray in a trash can; and defendant was heavily in debt and had recently increased the amount of insurance on the premises.

APPEAL by defendant from *Walker (Hal H.), Judge.* Judgment entered 14 June 1979 in Superior Court, FORSYTH County. Heard in the Court of Appeals 5 March 1980.

Defendant was charged in a bill of indictment with the unlawful burning of a building used in the carrying on of a trade. The events preceding the obtaining of the indictment follow.

On 28 August 1978, a fire occurred at the Clemmons Florist and Gift Shop in Clemmons. Defendant was the sole proprietor and operator of the business. On 28 August 1978, he let his employee, Janice Ellis, out the front door, locked it, and left out the back door. Five minutes after defendant closed the florist, the fire started. Upon arriving at the shop, Assistant Fire Marshal Frank Reed Jarvis began investigating the premises for possible causes of the fire. Subsequently, the Sheriff's Department also began investigating the fire. The record is not clear as to the date

the investigation began or what precipitated it. On 10 October 1978, the district attorney filed an application requesting that the Sheriff's Department be allowed to examine certain records in the possession of defendant, the Clemmons Florist and Gift Shop, Wachovia Bank and Trust Company (Wachovia), Central Carolina Bank, and the Northwestern Bank (Northwestern).

An order bearing the same date and entitled "ORDER FOR EXAMINATION OF BUSINESS AND BANK ACCOUNT RECORDS" was issued by the Superior Court. The order stated:

> "It appears to the Court from the duly verified Petition of Donald K. Tisdale, District Attorney for the Twenty-First Judicial District, that as a result of an investigation into the fire at Clemmons Florist and Gift Shop, Clemmons, North Carolina, on August 28, 1978, in Forsyth County, North Carolina, the said District Attorney for the State, the Honorable Donald K. Tisdale, has requested the Forsyth County Sheriff's Department to make an investigation and report in regard to said fire and
>
> It further appears to the Court that the Forsyth County Sheriff's Department through its agents has conducted an investigation into said matter which has disclosed evidence of irregularities which, if supported by evidence and found to be true, would constitute serious violations of the law on the part of one individual, and
>
> It further appears to the Court that the Forsyth County Sheriff's Department cannot complete its investigation without examining the business and working records and checking, savings, and loan accounts of Charles Steven Sheetz, 1730 Aberdeen Terrace, in the following named banks: Wachovia Bank and Trust Company, N.A., Central Carolina Bank, and Northwestern Bank."

Based upon its findings of fact, the court ordered the Wachovia Bank and Trust Company and the Northwestern Bank *to allow* representatives of the Sheriff's Department to examine bank records and the accounts of defendant and the Clemmons Florist and Gift Shop. Defendant was also ordered *to present* to representatives of the Sheriff's Department *for examination* all business and working records of the shop.

An order issued 4 December 1978 directed defendant to produce and turn over to the State Bureau of Investigation the business and working records of the shop and directed Wachovia, Central Carolina Bank, and Northwestern to allow the State Bureau of Investigation to examine the accounts of defendant and the Clemmons Florist and Gift Shop. A final order was entered on 13 December 1978 which stated in pertinent part:

> "It further appears to the Court that the State Bureau of Investigation cannot complete its investigation without examining the business accounts of Charles Steven Sheetz, 1730 Aberdeen Terrace, in the following named businesses and financial institutions: NCNB Visa Bank Card Department, Account No. 4342-650-042-346; Shell Oil Company, P. O. Box 80, Tulsa, Oklahoma 74102, Account No. 477-141-006; Citibank Visa, 2 Huntington Quad., Huntington Station, New York 11746, Account No. 4128-544-311-116; Blazer Financial Services, 229 West 5th Street, Winston-Salem, North Carolina; Capital Finance Company, 227 West 5th Street, Winston-Salem, North Carolina; and Southern Discount of Winston-Salem, Winston-Salem, North Carolina, for the period of January 1, 1978, through and including, August 28, 1978."

Defendant complied with these orders.

On 5 March 1979, Assistant Fire Marshal Frank Reed Jarvis submitted an investigative report to the district attorney, which stated in pertinent part:

> " 'It is the opinion of this investigator that after Charles Steven Sheetz let Mrs. Janis [sic] Ellis out the front door of the florist shop on 8-28-78, at approximately 1700, he returned to the work area of the shop and dumped the contents of at least one ash tray into the green plastic trash can under the long table in front of the walk-in cooler, this ash tray being the closest to his path of travel to the rear door, and intentionally set fire to the combustible materials in the area of the green plastic trash can.' "

On 2 April 1978, the grand jury returned a true bill of indictment against defendant. Prior to trial, defendant moved to suppress the introduction of any evidence gleaned from the business

records and the introduction of the business records. The motion to suppress was denied. The trial court concluded that the 10 October 1978 and 4 December 1978 orders were in the nature of a subpoena *duces tecum.* No mention was made of the 13 December 1978 order.

The jury found defendant guilty. From the judgment entered and a term of imprisonment, defendant appeals.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Alan S. Hirsch, for the State.*

*Morrow, Fraser & Reavis, by Bruce C. Fraser, for defendant appellant.*

ERWIN, Judge.

Defendant's initial assignment of error concerns the trial court's denial of his motion to suppress the introduction of evidence. We find it necessary to review the propriety of the orders to resolve this contention.

### I. Order (10 October 1978)

The order issued on 10 October 1978 was entitled "ORDER FOR EXAMINATION OF BUSINESS AND BANK ACCOUNT RECORDS." The language of the order provided for an examination of the business and working records of defendant's business, as well as those of the banks named therein. The order was different from those issued on 4 December and 13 December. We believe this difference was of constitutional magnitude.

[1] Normally, an order to produce documents, a subpoena, or subpoena *duces tecum,* is not thought to invoke the strictures of the Fourth Amendment of the United States Constitution, which provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

However, a subpoena is subject to the Fourth Amendment stricture aginst indefiniteness. *See United States v. Miller,* 425 U.S. 435, 48 L.Ed. 2d 71, 96 S.Ct. 1619 (1976); *Fisher v. United States,* 425 U.S. 391, 48 L.Ed. 2d 39, 96 S.Ct. 1569 (1976); *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 90 L.Ed. 614, 66 S.Ct. 494 (1946); *Wilson v. United States,* 221 U.S. 361, 55 L.Ed. 771, 31 S.Ct. 538 (1911). Thus, the nature of the order being considered is of significance.

[2]  The present order is akin to those called for by the United States Supreme Court in *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 56 L.Ed. 2d 305, 98 S.Ct. 1816 (1978); *See v. Seattle,* 387 U.S. 541, 18 L.Ed. 2d 943, 87 S.Ct. 1737 (1967); and *Camara v. Municipal Court,* 387 U.S. 523, 18 L.Ed. 2d 930, 87 S.Ct. 1727 (1967), *i.e.,* administrative search warrants. G.S. 15-27.2 expressly authorizes issuance of administrative and inspection warrants. "But '[i]f the authorities are seeking evidence to be used in a criminal prosecution, the usual standard [of probable cause] will apply.' " *Michigan v. Tyler,* 436 U.S. 499, 508, 56 L.Ed. 2d 486, 498, 98 S.Ct. 1942, 1950 (1978), and the warrant must be viewed as a criminal investigative search warrant.[1] *Michigan v. Tyler, supra.* With this in mind, we look to see if the search warrant and its issuance meet the constitutional requirements embodied in the Fourth Amendment of the United States Constitution.

## A. Probable Cause

"Within the meaning of the Fourth Amendment and G.S. 15-25(a), now G.S. 15A-243 to 245, probable cause means a reasonable ground to believe that the proposed search will reveal the presence, upon the premises to be searched, of the objects sought and that those objects will aid in the apprehension or conviction of the offender. *State v. Campbell, supra.* Thus, the affidavit upon which a search warrant is

---

1. G.S. 15-27.2(c)(1) provides that when an authorized person under G.S. 15-27.2(a) seeks a warrant which is not a part of a legally authorized program of inspection, a warrant to conduct an inspection may issue upon a showing of *probable cause.* The probable cause standard has been interpreted to be the same as in the case of a search warrant in a criminal proceeding. *Gooden v. Brooks, Comr. of Labor,* 39 N.C. App. 519, 251 S.E. 2d 698, *appeal dismissed,* 298 N.C. 806, 261 S.E. 2d 919 (1979). Thus, whether the warrant is viewed as an administrative search warrant or a regular search warrant issued pursuant to G.S. 15A-245 is not material to the resolution of this case.

issued is sufficient if it 'supplies reasonable cause to believe that the proposed search for evidence of the commission of the designated criminal offense will reveal the presence upon the described premises of the objects sought and that they will aid in the apprehension or conviction of the offender.' *State v. Vestal*, 278 N.C. 561, 180 S.E. 2d 755 (1971)."

*State v. Riddick*, 291 N.C. 399, 406, 230 S.E. 2d 506, 511 (1976), *reh. denied*, 293 N.C. 261, 247 S.E. 2d 234 (1977). The affidavit upon which the order of 10 October 1978 was issued alleged in pertinent part:

"[T]hat as a result of an investigation being conducted by the Forsyth County Sheriff's Department into a fire occurring at Clemmons Florist and Gift Shop on August 28, 1978 in Forsyth County, Clemmons, North Carolina, the said District Attorney has reason to believe that the examination of certain records in the possession of Charles Steven Sheetz and one Clemmons Florist Gift [sic] Shop and the entire business and working records of the Clemmons Florist and Gift Shop would be in the best interest of the enforcement of the law and the administration of justice in Forsyth County . . ."

"Probable cause cannot be shown 'by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based . . . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police.' *United States v. Ventresca*, 380 U.S. 102, 13 L.Ed. 2d 684, 85 S.Ct. 741 (1965). The issuing officer 'must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion . . . .' *Giordenello v. United States*, 357 U.S. 480, 2 L.Ed. 2d 1503, 78 S.Ct. 1245 (1958)."

*State v. Campbell*, 282 N.C. 125, 130-31, 191 S.E. 2d 752, 756 (1972).

In *State v. Campbell, supra*, a special agent for the State Bureau of Investigation had sworn under oath that he had prob-

able cause to believe that defendant Campbell had certain illegal drugs in the described house. The facts allegedly justifying issuance of a warrant were the agent's possession of arrest warrants for defendant and his cohorts and the fact that:

> " 'Peter Michael Boulus, Special Agent; N.C. State Bureau of Investigation; being duly sworn and examined under oath, says under oath that he has probable cause to believe that Kenneth Campbell; M. K. Queensberry and David Bryan has on his premises certain property, to wit: illegally possessed drugs (narcotics, stimulants, depressants), which constitutes evidence of a crime, to wit: possession of illegal drugs . . . .' "

*Id.* at 130, 191 S.E. 2d at 756. One of the grounds upon which our Supreme Court held the seizure of the drugs unconstitutional was that nowhere in the affidavit was there a sufficient statement of underlying circumstances *from which the magistrate could have concluded* that probable cause existed. We believe that the affidavit in question contains the same flaw. The allegation that agents have conducted an investigation which has disclosed evidence of irregularities which, if supported by evidence and found to be true, would constitute serious violations of the law on the part of the defendant, without the disclosure of facts from which the magistrate could ascertain the existence of irregularities that would constitute serious violations of the law, does not meet the constitutional standard for issuance of a search warrant. *See Spinelli v. United States*, 393 U.S. 410, 21 L.Ed. 2d 637, 89 S.Ct. 584 (1969); *United States v. Ventresca*, 380 U.S. 102, 13 L.Ed. 2d 684, 85 S.Ct. 741 (1965); *Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed. 2d 723, 84 S.Ct. 1509 (1964); *accord, State v. Macri*, 39 N.J. 250, 188 A. 2d 389 (1963).

Defendant's motion to suppress introduction of the records or evidence gleaned from the records seized from him personally and the Clemmons Florist and Gift Shop pursuant to the order dated 10 October 1978 should have been allowed. *See Wong Sun v. United States*, 371 U.S. 471, 9 L.Ed. 2d 441, 83 S.Ct. 407 (1963); *Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed. 2d 1081, 81 S.Ct. 1684 (1961); *see also* G.S. 15A-974.

## B. Exclusionary Rule

Evidence seized during an unlawful search cannot constitute proof against the victim of the search,[2] and the exclusionary prohibition extends to the indirect as well as to the direct products of such invasions. *Wong Sun v. United States, supra,* and *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 64 L.Ed. 319, 40 S.Ct. 182 (1920). As stated by Mr. Justice Holmes in *Silverthorne Lumber Co. v. United States, Id.* at 392, 64 L.Ed. at 321, 40 S.Ct. at 183:

> "The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it in the way proposed."

Subsequent case law has restated this requirement thusly:

> "[T]he more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' "

*Wong Sun v. United States,* 371 U.S. 471, 488, 9 L.Ed. 2d 441, 455, 83 S.Ct. 407, 417 (1963). Thus, we must look to see if the evidence obtained pursuant to the orders dated 4 December 1978 and 13 December 1978 was obtained by exploitation of the unlawful search and seizure or by means sufficiently distinguishable to be purged of the primary taint.

---

2. Defendant does not have standing to object to the seizure of or use of the business records of the banks or financial institutions at trial. *See United States v. Miller,* 425 U.S. 435, 48 L.Ed. 2d 71, 96 S.Ct. 1619 (1976).

Defendant's reliance on the Right to Financial Privacy Act of 1978, § 1100, 12 U.S.C. 3401 *et seq.* is misplaced since the act, even if it bars such disclosure, by its terms would not apply to acts occurring prior to November 10, 1978.

## II. Orders Dated 4 and 13 December 1978

[3]   The orders of 4 December 1978 and 13 December 1978 are subpoenas, and evidence procured by subpoenas is normally not subject to the strictures of the Fourth Amendment. *Fisher v. United States*, 425 U.S. 391, 48 L.Ed. 2d 39, 96 S.Ct. 1569 (1976); *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 90 L.Ed. 614, 66 S.Ct. 494 (1946); *Wilson v. United States*, 221 U.S. 361, 55 L.Ed. 771, 31 S.Ct. 538 (1911). Thus, evidence obtained pursuant to these orders can only be excluded if it has been obtained by exploitation of the illegal search and seizure.[3] For the reasons that follow, we hold the evidence obtained from defendant personally and as sole proprietor should have been excluded and could not be used to sustain the conviction.

The order dated 4 December 1978 was issued upon the application of the district attorney to facilitate the completion of the criminal inquiries of the sheriff and the State Bureau of Investigation.

In *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 64 L.Ed. 319, 40 S.Ct. 182 (1920), the United States Supreme Court, when faced with a similar factual situation, held that evidence lawfully obtained pursuant to subpoenas issued subsequent to a prior unlawful seizure was not admissible to sustain a criminal prosecution against the defendants.

In *Silverthorne*, an indictment had been filed against defendants. They were both arrested. Meanwhile, the United States Marshal, without lawful process, seized books, papers, and documents of defendants' company. Defendants filed an application to have the books returned. The District Court ordered the return of the items, but not before copies and photographs had been made. Subpoenas were then served to reproduce the items. While the facts in the instant case differ, in that here an unlawful search warrant preceded the initial unlawful search, we find no difference of constitutional magnitude, because the issuance of the subsequent subpoenas as in *Silverthorne* was inextricably

---

3. Defendant can only object to the records taken from him personally and as the sole proprietor of the Clemmons Florist and Gift Shop. *See* Footnote 2. Thus, the evidence obtained from the banks and financial institutions was admissible, and the 13 December 1978 order becomes irrelevant to our decision.

connected with the prior illegal search. Their very issuance was for the purpose of exploiting the evidence obtained by the prior illegal search, *i.e.*, to show criminal acts. For these reasons, we reverse.

### III. Production of Records

[4] Defendant also raises the argument that use of business records of a sole proprietor against him in a criminal proceeding when the records are obtained pursuant to subpoenas is violative of the Fifth Amendment of the United States Constitution privilege against self-incrimination.

Whatever solace defendant may have taken from the language used by Mr. Justice Marshall in *Bellis v. United States*, 417 U.S. 85, 87-88, 40 L.Ed. 2d 678, 683, 94 S.Ct. 2179, 2182-83 (1974), stating that "[t]he privilege applies to the business records of the sole proprietor or sole practitioner as well as to personal documents containing more intimate information about the individual's private life" has been eviscerated by the Court's subsequent decisions which have all but eliminated the privilege for the private individual, the very person for whom the amendment sought to provide.

In the leading case, *Fisher v. United States*, 425 U.S. 391, 48 L.Ed. 2d 39, 96 S.Ct. 1569 (1976), the United States Supreme Court held that a taxpayer does not have standing to invoke the privilege where the government orders the taxpayer's accountant to produce work papers prepared from information given him by the taxpayer for the preparation of the taxpayer's tax return. In reaching its decision, the Court reasoned that "[t]he accountant's workpapers are not the taxpayer's. They were not prepared by the taxpayer, and they contain no testimonial declarations by him." *Id.* at 409, 48 L.Ed. 2d at 55, 96 S.Ct. at 1580. In the instant case, defendant testified:

> "My accountant usually does my taxes for me. I sign the returns, but don't never [sic] look at them. I just sign whatever he fills out.
>
> . . . I check quarterly with my bookkeeper when he does my quarterly taxes. I have got to turn over all the materials to the bookkeeper so he can prepare the tax forms, and he

checks the books. He usually computes the amount of inventory value from either the invoices or what has been put in the ledger. I don't know how he arrives at the equipment value."

Inasmuch as defendant's appeal is based on turning over his tax returns to the State pursuant to the subpoenas, his constitutional argument is rendered meritless by the decision in *Fisher v. United States, supra.*

In all candor, we must call attention to our decision in *Lowder v. All Star Mills, Inc.,* 45 N.C. App. 348, 263 S.E. 2d 624 (1980).

In *Lowder,* we held that the defendant could not be held in contempt for failure to furnish copies of *his* federal and state income tax returns or to write out a list of his assets because of the privilege against self-incrimination embodied in the Fifth Amendment of the United States Constitution. Our premise in holding that the defendant could not be forced to furnish copies of his federal and state income tax returns was that the returns were *prepared* by *defendant.* The issue as to whether someone else had prepared the returns for the defendant was neither raised nor addressed.

In the instant case, defendant testified: "I have had no really formal education in bookkeeping. I am more or less a small businessman who kept his own books and records and took them to my accountant quarterly." To the extent that defendant's constitutional argument rests on the compelled production of business records prepared by him as sole proprietor of the Clemmons Florist and Gift Shop, it must prevail. *See Lowder v. All Star Mills, Inc.,* 45 N.C. App. 348, 263 S.E. 2d 624 (1980). The motion to suppress should have been allowed as it related to the following records in the possession of defendant—invoices, accounts receivable, outstanding notes payable, and credit charges.

### IV. Motion to Dismiss

Defendant's plea of not guilty in a prosecution under G.S. 14-62 places the burden upon the State to prove (1) the fire, (2) that it was of incendiary origin, and (3) that defendant was connected with the crime. *State v. Cuthrell,* 233 N.C. 274, 63 S.E. 2d 549 (1951).

A motion for dismissal pursuant to G.S. 15A-1227 tests the sufficiency of the evidence to sustain a conviction. *State v. Smith*, 40 N.C. App. 72, 252 S.E. 2d 535 (1979).

> "In considering a motion for judgment as in the case of non-suit or, as in the present case, a motion for dismissal pursuant to G.S. 15A-1227, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. Thomas*, 296 N.C. 236, 250 S.E. 2d 204 (1978). All evidence admitted during the trial, whether competent or incompetent, which is favorable to the State must be taken as true, and contradictions or discrepancies therein must be resolved in the State's favor. *State v. Agnew*, 294 N.C. 382, 241 S.E. 2d 684 (1978). The trial court in considering such motions is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971)."

*Id.* at 80, 252 S.E. 2d at 540-41.

Evidence that a fire occurred is not in dispute. However, defendant contends that the evidence of incendiary origin is incompetent and that there is no causal connection between him and the fire.

[5] Defendant's argument that the evidence of incendiary origin is incompetent is meritless. An expert in arson investigation may properly give his opinion that a fire was of incendiary origin where his opinion is based on the expert's own examination of the premises and based on a proper hypothetical question supported by the evidence. *State v. Smith*, 34 N.C. App. 671, 239 S.E. 2d 610 (1977), *appeal dismissed*, 294 N.C. 186, 241 S.E. 2d 73 (1978). For purposes of a motion to dismiss, incompetent evidence may be considered. Thus, assuming *arguendo* that the witness was improperly qualified as an expert, his testimony would still support denial of the motion to dismiss. *State v. Cuthrell, supra*, does not establish a contrary rule.

[6] As to defendant's argument about the sufficiency of the causal connection, we note that the assistant fire marshal's report was read to the jury and connected defendant with the crime. We

hold that this evidence was sufficient to withstand the motion to dismiss. On the day of the fire, defendant had closed the shop. The fire occurred within five minutes of the closing. The fire was not caused by electrical malfunction. When the firemen arrived, the premises was still secure. When this evidence is viewed in the light most favorable to the State, an inference of guilt clearly arises. When evidence of motive, *i.e.*, heavy indebtedness, and evidence of a recent increase in the amount of insurance on the premises are coupled with the foregoing circumstances, the jury could reasonably find defendant guilty of the crime charged. We find the facts in *State v. Blizzard*, 280 N.C. 11, 184 S.E. 2d 851 (1971), distinguishable.

Other assignments of error submitted need not be considered, as they may not occur at retrial.

For the errors noted in the foregoing text, defendant is entitled to a

New trial.

Judges MARTIN (Robert M.) and CLARK concur.