IN RE SUPERIOR COURT ORDER DATED APRIL 8, 1983

No. 8318SC590

(Filed 21 August 1984)

1. **Constitutional Law § 21— corporation ordered to produce documents—no constitutional right to privacy**

A corporation has only a limited right to object to process for production of documents on Fourth Amendment grounds, and even if the trial court's order did affect the constitutional privacy interests of respondent corporation's customers in this case, respondent had no standing to contest that any such interests had been violated.

---

---

**2. Banks and Banking § 3— criminal investigation of customer—duty to disclose records—order of confidentiality**

Nothing in the common law prohibits an order requiring production of bank records as part of an investigation of criminal activities of the bank's customers, and the Superior Courts of North Carolina continue to possess such power where the interests of justice so require; moreover, it is within the court's authority to order that examination of the records remain confidential.

APPEAL by respondent from *Walker, Russell G., Jr., Judge.* Order entered 8 April 1983 in Superior Court, GUILFORD County. Heard in the Court of Appeals 5 April 1984.

In furtherance of a criminal investigation the State petitioned the Superior Court of Guilford County for an order requiring respondent corporation NCNB National Bank of North Carolina (hereinafter "NCNB") to disclose its records pertaining to one of its customers. The State gave as grounds simply that it had "reason to believe" that the examination of the records "would be in the best interest of justice." Relying on the verified petition, and finding as fact that the best interest of law enforcement and justice so required, the court ordered NCNB to make the requested copies available to the State. Pursuant to the State's request for confidentiality, the court also ordered that NCNB withhold disclosure of the examination for 90 days. NCNB appeals.

*Attorney General Edmisten, by Assistant Attorney General Daniel C. Higgins, for the State.*

*Smith, Moore, Smith, Schell & Hunter, by Benjamin F. Davis, Jr., for respondent appellant.*

JOHNSON, Judge.

[1] NCNB challenges the order on a number of grounds. We dispose first of the constitutional arguments it attempts to bring forward. It is well established that a corporation such as NCNB has only a limited right, not applicable here, to object to process for production of documents on Fourth Amendment grounds. *California Bankers Assoc. v. Shultz,* 416 U.S. 21, 94 S.Ct. 1494, 39 L.Ed. 2d 812 (1974). Even if we were to find the order affects the constitutional privacy interests of NCNB's customers, which it does not, *United States v. Miller,* 425 U.S. 435, 96 S.Ct. 1619, 48

L.Ed. 2d 71 (1976), it is clear that NCNB has no standing to contest that any such interests have been violated. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed. 2d 387 (1978), *reh'g denied*, 439 U.S. 1122, 99 S.Ct. 1035, 59 L.Ed. 2d 83 (1979). NCNB's constitutional contentions, couched in its argument that the State must show some probable cause to obtain disclosure, must therefore be rejected.

We note that Congress has re-established, since *Miller, supra*, a certain degree of privacy in bank records, by passage of the "right to Financial Privacy Act of 1978." 12 U.S.C. § 3401 *et seq.* (1982). That Act prohibits access by Government authorities to financial records in the manner sought here. 12 U.S.C. §§ 3402, 3403 (1982). The Act applies only to agencies or departments of the United States, however, not the State of North Carolina. 12 U.S.C. § 3401(3) (1982). *See Suburban Trust Co. v. Waller*, 44 Md. App. 335, 408 A. 2d 758 (1979) (bank disclosure case merely citing federal Act as reflective of policy).

NCNB focuses the bulk of its argument on the lack of statutory authority for issuance of the order. It is true that no statute specifically authorizes issuance of an order to examine bank records. Even though, as we have noted above, neither the bank nor the customer has a constitutionally protected expectation of privacy in the bank records, there is however little effective procedure for law enforcement officials to examine bank records at the investigatory stage of a proceeding. Subpoenas are not available by statute until an action has been commenced. G.S. 15A-802; G.S. 1A-1, Rule 45 (may only issue in a pending cause). Obviously, at the investigatory stage there is insufficient evidence to support a finding of probable cause, and administrative or criminal search warrants cannot be used. G.S. 15-27.2; G.S. 15A-241 *et seq.* The grand jury does have power to initiate an investigation for which no bill of indictment has been submitted, but only if it finds probable cause for the charges. G.S. 15A-628(a)(4). Accordingly, the only statutory avenue open to the prosecutor in a case such as this is to prepare a bill of indictment without probable cause, submit it to the grand jury and obtain subpoenas in the hope that the witness(es) would provide sufficient probable cause to bring the investigation to a successful close. *See* G.S. 15A-623, 15A-626, 15A-628. This would necessarily involve the burdensome examination of numerous records, in this case some 3,400, before the

grand jury. There is apparently no prohibition against resubmitting the same information on a new bill of indictment, other than the roadblocks to investigation outlined above and the obvious expense and delay of again reviewing large numbers of financial records before the grand jury. *See* G.S. 15A-629.

However, the existence of some statutory procedure does not preclude other procedure. Where the General Assembly has expressly and constitutionally mandated certain procedures, and where the situation before the court constitutes one triggering that procedure, the court of course has no power to do otherwise. *In re Greene*, 297 N.C. 305, 255 S.E. 2d 142 (1979) (judge could not continue judgment on DUI conviction where statute expressly and unequivocally required sentencing). However, there is nothing in the statutes *prohibiting* the procedure employed here; nor is the procedure established by the grand jury provisions exclusive.

The courts of general jurisdiction of North Carolina, including the Superior Court, unless specifically denied them by statute, retain the powers inherent in them at common law. *English v. Brigman*, 227 N.C. 260, 41 S.E. 2d 732 (1947). They are not restricted solely to those enumerated by statute. Thus, for example, the Supreme Court has held that even though G.S. 15A-957 limited the Superior Court's *statutory* authority to transfer venue, the court retained its *inherent* authority to make transfers beyond those allowed by statute where the interests of justice so required. *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, 448 U.S. 907, 65 L.Ed. 2d 1137, 100 S.Ct. 3050, *reh'g denied*, 448 U.S. 918, 65 L.Ed. 2d 1181, 101 S.Ct. 41 (1980); *see also* R. Mallard, Inherent Power of the Courts of North Carolina, 10 Wake Forest L. Rev. 1, 20-23 (1974) (other examples of inherent powers).

We have researched the common law and discover in it nothing barring production of records in the manner presented here. Under the English law, first the Star Chamber and later Parliament arrogated to themselves virtually unlimited search powers; in fact, the "general writs" issued thereunder were a primary grievance of the revolting colonists. *See Boyd v. United States*, 116 U.S. 616, 626-629, 6 S.Ct. 524, 530-532, 29 L.Ed. 746, 749-751 (1886); 1 W. LaFave, Search and Seizure § 1.1 at 1-3 (1978). However, the adoption of the Fourth Amendment altered the

common law with respect to the rights of persons suspected or accused of crime, not of impartial corporations. A careful reading of Justice Bradley's exhaustive opinion in *Boyd, supra* (often described as "the leading Fourth Amendment case," *see* LaFave, *supra*, at 6), makes this clear.

[2] Corporations such as NCNB have never possessed the kind of Fourth Amendment protection accorded to persons and their homes. *See Hale v. Henkel*, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906). Corporations' special status as creatures of the state exposes them to exhaustive state scrutiny in exchange for the privilege of state recognition. *Id.* at 74-75, 26 S.Ct. at 379, 50 L.Ed. at 665; *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950) (even "official curiosity" may justify inspection). A moment's reflection on the historical circumstances during the common law period probably explains the common law's silence on the right of corporations to object to requests for examinations of their records: (1) corporations were not such a prevalent form of business organization and (2) exhaustive records as we know them today were probably kept, if at all, only by the government. Accordingly, we conclude that nothing in the common law prohibits an order requiring production of bank records as part of an investigation of criminal activities of the bank's customers, and, if anything, the common law courts affirmatively possessed such power. By extension, then, the Superior Courts of North Carolina continue to possess such power where the interests of justice so require. *State v. Barfield, supra.*

This conclusion is supported by several recent decisions of this Court. We have upheld the issuance of compulsory process under the inherent power where the statutory scheme failed to explain the procedure for determining when the Superior Court may compel disclosure of privileged information. *In re Mental Health Center*, 42 N.C. App. 292, 256 S.E. 2d 818, *disc. rev. denied*, 298 N.C. 297, 259 S.E. 2d 298 (1979). In two other cases, the admission of evidence obtained by orders virtually identical to that used in the present case was upheld. *State v. Overton, Smedley, Ruviwat, and Atkinson*, 60 N.C. App. 1, 298 S.E. 2d 695 (1982), *disc. rev. denied and appeal dismissed*, 307 N.C. 580, 299 S.E. 2d 652 (Overton); 307 N.C. 581, 299 S.E. 2d 653 (Smedley); 307 N.C. 581, 299 S.E. 2d 652 (Ruviwat); 307 N.C. 578, 299 S.E. 2d 651 (Atkinson) (1983); *State v. Sheetz*, 46 N.C. App. 641, 265 S.E. 2d

914 (1980). *Sheetz* in particular is apposite: in that case, upon an affidavit equally devoid of factual allegations, the Superior Court issued an "Order for Examination of Business and Bank Account Records." We approve the admission of evidence thus obtained from the banks, distinguishing it from evidence obtained from the individual. We approved admission of evidence obtained under similar circumstances in *Overton, supra.*

In addition, policy supports our decision in several ways. First, as noted above, procedure before the grand jury is unwieldy and perhaps inconclusive. The bank will probably be less inconvenienced by an on-premises examination by investigators as opposed by production in court of all records, without prior knowledge of (1) their contents or (2) the likely utility of their production. The cost to the public thus will remain relatively low. The order for examination can be accompanied by instructions for confidentiality in order to prevent flight or destruction of evidence. *Compare* G.S. 15A-623(f) (allowing sealing of indictments), *with* 12 U.S.C. § 3409 (1982) (federal policy allowing delayed notice). And, finally, NCNB would enjoy no more protection from arbitrary demands for production were subpoenas to be required. These ordinarily issue upon request, without any showing of cause, and are subject to being quashed only in the discretion of the court. G.S. 1A-1, Rule 45. As the present case demonstrates, NCNB has received at least equal opportunity to be heard and contest the order under the chosen procedure.

We also conclude that the court did not act improperly in ordering that the examination remain confidential. There appears to be no constitutional bar to such an order. *See Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed. 2d 608 (1979) (no right to publicity beyond that afforded accused by Sixth Amendment). In fact, similar orders are allowed by federal statute, 12 U.S.C. § 3409 (1982), and case law. *In re Swearingen Aviation Corp.,* 605 F. 2d 125 (4th Cir. 1979). North Carolina law does not appear to establish a stricter standard. No right of a defendant to be heard before the court, nor of the public to hear the final judgment of the court, was abridged. *See In re Nowell,* 293 N.C. 235, 237 S.E. 2d 246 (1977). Counterbalancing such considerations are the law enforcement interests in confidentiality outlined above, and the fact that failure of confidentiality may tend to foil the efficient administration of justice with which the court is charged.

Accordingly, NCNB's second assignment of error is also over-ruled.

We find that the court had authority to issue the order, and no abuse of process in its issuance is apparent, when compared with the information submitted to the court in *Sheetz, supra.* However, in future cases of this type it will undoubtedly facilitate review and increase cooperation on the part of those examined if the State makes a more complete statement of the circumstances underlying its petition and the reasons the administration of justice requires an order allowing examination.

NCNB contends briefly that compliance with the order will constitute an undue burden because of the costs involved. It appears from an affidavit in the record that the State has already agreed to limit its examination to a smaller number of records, and it is possible that subsequent negotiation may result in further reductions in cost of examination. NCNB has not requested payment of its costs from the court. *See* G.S. § 1A-1, Rule 45(c)(2) (court may award costs of production). Under the circumstances, and in light of the facts that any expression of opinion on this issue by this Court would be purely advisory, we choose not to address it at this time.

The order appealed from is accordingly

Affirmed.

Judges HEDRICK and HILL concur.