**STATE v. WOODS**

[109 N.C. App. 360 (1993)]

---

STATE OF NORTH CAROLINA v. VERNON JUNIOR WOODS

No. 9129SC988

(Filed 16 March 1993)

1. **Arson and Other Burnings § 8 (NCI4th) — burning of outhouse — storage building**

   The trial court did not err by denying defendant's motion to dismiss an indictment for burning an uninhabited storage building in violation of N.C.G.S. § 14-62 where the verdict sheet shows that the jury found defendant guilty of burning an "outhouse." Although defendant argues that an "outhouse" is an outdoor toilet or privy and not a storage building, there is little doubt that the storage building at issue falls within the modern definition of an outhouse. The intent of the legislature in 1875, which ratified the predecessor to the current version of the statute, is also illuminating. The jury heard evidence from several witnesses as to the contents of the storage building, there was no evidence that the building burned was an outdoor toilet, and there could not have been any confusion by the jury as to the manner of structure the defendant burned. Although the exact distance from the house to the storage building is not in the record, it was described as half the length of the courtroom and was within the curtilage of the house.

   **Am Jur 2d, Arson and Related Offenses §§ 16 et seq.**

2. **Arson and Other Burnings § 29 (NCI4th) — burning of storage building — sufficiency of evidence**

   The trial court properly denied defendant's motion to dismiss a charge of burning an uninhabited storage build-

STATE v. WOODS

[109 N.C. App. 360 (1993)]

ing for insufficient evidence where the evidence tended to show that defendant escaped from the North Carolina Department of Correction while working on a road crew; a passer-by saw a trail of fire proceeding from the roadway to a storage building located adjacent to a nearby house; the passer-by called the authorities; he and others returned to the scene and found defendant standing in the middle of the road; defendant replied to their questions merely by saying that he lived "up the road"; he later took a car and fled; the storage building was completely destroyed by fire; and a member of the arson investigation team for the fire department concluded that the fire was incendiary in origin. Viewed as a whole, there was substantial circumstantial evidence in that defendant was the only person seen in close proximity to the fire after it started, the fire was not accidental, defendant failed to warn near-by residents, lied about his identity, and attempted to flee the scene in a stolen car.

**Am Jur 2d, Arson and Related Offenses § 55.**

Appeal by defendant from judgment entered 13 June 1991 by Judge Herbert O. Phillips, III, in McDowell County Superior Court. Heard in the Court of Appeals 11 January 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Julia F. Renfrow, for the State.*

*Dameron and Burgin, by Anthony Lynch, for defendant-appellant.*

LEWIS, Judge.

The defendant was charged in a proper bill of indictment on 21 October 1989, among other crimes, with wantonly and willfully burning "an uninhabited storage building located at 607 Old Highway 10, Marion, North Carolina" in violation of N.C.G.S. § 14-62. A trial was held on the charges beginning on 10 June 1991, in McDowell County before the Honorable Herbert O. Phillips, III. At trial the evidence presented tended to show that on 18 October 1989, defendant was an inmate in the North Carolina Department of Correction. While working on a road crew in McDowell County between Marion and Old Fort, the defendant escaped.

On 21 October 1989, around 5:00 a.m. Dennis Butner ("Butner") was driving his car in Marion on Old Highway 10 when he saw a "trail of fire" proceeding from the roadway to a "storage building" located adjacent to a nearby house. Butner testified that when he first saw the fire, the flames had not yet reached the storage building. Upon seeing the fire, Butner called the authorities. When Butner and others returned to the scene of the fire, they found the defendant standing in the middle of the road. To their questions the defendant merely replied that he "lived up the road." He later took Butner's car and fled, only to be recaptured.

The storage building, which was owned by Edith Sowers ("Sowers"), was completely destroyed by the fire. Sowers and her children had used the storage building to store lawn mowers, weed eaters, gasoline, furniture, tools and other items. The building was often referred to as a "garage," even though it did not house an automobile.

Charles Presnell, an engineer and a member of the arson investigation team for the Marion Fire Department conducted an investigation as to the cause and origin of the fire. As a result of his investigation, Presnell concluded that the fire was incendiary in origin.

The defendant testified at trial that he had escaped from the road squad and that he had stolen Butner's car. However, the defendant denied having set fire to the storage building.

Upon hearing all the evidence, the jury convicted the defendant on three counts of assault with a deadly weapon, two counts of traffic violations, one count of felony larceny, one count of felony escape from prison and one count of burning an uninhabited storage building. The only conviction from which defendant appeals is the burning of the uninhabited storage building or "outhouse."

[1] As his first assignment of error, the defendant argues that the trial court erred in denying his motion to dismiss on the grounds that N.C.G.S. § 14-62 "does not prohibit the burning of the structure that is alleged to have been burned in this case." We disagree. Defendant was charged pursuant to N.C.G.S. § 14-62 (1986) which provides:

> If any person shall wantonly and willfully set fire to or burn or cause to be burned, or aid, counsel or procure the burning of, any uninhabited house, any church, chapel, or meetinghouse,

or any stable, coach house, outhouse, warehouse, office, shop, mill, barn or granary, or any building, structure, or erection used or intended to be used in carrying on any trade or manufacture, or any branch thereof, whether the same or any of them respectively shall then be in the possession of the offender, or in the possession of any other person, he shall be punished as a Class E felon.

The verdict sheet shows that the jury found the defendant guilty of burning an "outhouse." It is the defendant's contention that the building which was burned does not come within the purview of N.C.G.S. § 14-62, and that he should have been charged with violating N.C.G.S. § 14-67.1 (1986) which provides:

If any person shall wantonly and willfully set fire to or burn . . . any building or other structure of any type not otherwise covered by the provisions of this Article, he shall be punished as a Class H felon.

The defendant and the State agree that the building which was burned was a storage building. However, the defendant and the State disagree as to whether such a storage building is an "outhouse" within the meaning of N.C.G.S. § 14-62. Defendant argues that an "outhouse" is an outdoor toilet or privy and not a storage building. The State contends that the definition of "outhouse" is not limited to outdoor toilets and that it also encompasses any "outbuilding." We hold that all privies are outhouses but not all outhouses are privies.

In interpreting statutes, where the words of a statute have not gained a technical meaning, they must be given their common and ordinary meaning unless a different meaning is apparent or required by the context. *Pelham Realty Corp. v. Board of Transp.*, 303 N.C. 424, 279 S.E.2d 826 (1981). In Black's Law Dictionary an "outhouse" is defined as follows:

A building subservient to, yet distinct from, the principal dwelling, located either within or without the curtilage. A smaller or subordinate building connected with a dwelling, usually detached from it and standing at a little distance from it, not intended for persons to live in, but to serve some purpose of convenience or necessity; as a barn, outside privy, a dairy, a toolhouse, and the like.

Black's Law Dictionary 993 (5th ed. 1979). Similarly, Webster's defines an "outhouse" as any "outbuilding." Webster's Third New International Dictionary 1602 (1968). There is little doubt that the storage building at issue falls within the modern definition of an outhouse.

However, the predecessor to the current version of N.C.G.S. § 14-62 was first ratified 22 March 1875 and the term "out-house" has since been a part of N.C.G.S. § 14-62. 1874-75 N.C. Sess. Laws Chap. 228. Therefore, we feel that the intent of the legislature in 1875 is illuminating in interpreting the meaning that should be attached to the word "outhouse." See State ex rel. Comm'r of Ins. v. North Carolina Auto. Rate Admin. Office, 294 N.C. 60, 241 S.E.2d 324 (1978) (primary function of court in construing legislation is to insure that purpose of the enacting legislature is accomplished). In a case decided less than ten years after the enactment of N.C.G.S. § 14-62, our Supreme Court held that the term "out-house" has a technical meaning: "An out-house is one that belongs to a dwelling-house, and is in some respect parcel of such dwelling-house and situated within the curtilage." State v. Roper, 88 N.C. 656, 658 (1883). This definition shows that the term "out-house" in 1883 was not limited to an outdoor toilet. In fact, the defendant in Roper was charged with burning an "out-house used as a store-house." When the Roper definition of "out-house" is applied to the present case, it is clear that the storage house which the defendant burned falls within the statutory definition of "outhouse."

We are also guided by other uses of the term "outhouse" during this same period of time. Webster's Unabridged Dictionary, 1853, defines "outhouse" as: "Small house or building at a little distance from the main house." "Privy" is defined as: "secret," "a necessary house;" "necessary" is defined as "a privy."

On 15 October 1880 a fire of unknown origin destroyed buildings in the northwest corner of Capitol Square. A belfry, wood and coal house and the "old closets" were destroyed. Governor Thomas Jarvis of Pitt County and a founder of East Carolina University stated in his message of 3 January 1883 to the Legislature that "[t]he old closets in the northwest corner of the Capitol Square, which were destroyed by fire some two years ago, have not been rebuilt. . . . This rendered it necessary to make other arrangements for closets and sewerage for the Capitol. This necessity will soon

be met by the completion of suitable closets in the rear of the Agricultural building, with proper sewerage, which are now in process of construction."

The jury heard evidence from several witnesses as to the contents of the storage building and knew that it contained lawn mowers and other yard implements. Therefore, there could not have been any confusion on the part of the jury as to what manner of structure the defendant allegedly burned. Never did the jury hear any evidence that the building burned was an outdoor toilet.

The only question remaining under defendant's first assignment of error is whether the storage building was within the curtilage of the Sowers' house. Similar to the term "out-house," the term "curtilage" has been defined by case law. In *State v. Twitty*, 2 N.C. 102 (1794), curtilage was defined as meaning "a piece of ground, either enclosed or not, that is commonly used with the dwelling-house." *See also, State v. Browning*, 28 N.C. App. 376, 221 S.E.2d 375 (1976) (building described as "little shack," "shed" or "garage" located twenty feet from house found to be "within the curtilage of the home").

Though the exact distance which the storage house was situated from the house is not reflected in the Record, the distance was described as about half the length of the courtroom. Even considering the commodious main courtrooms of Richmond, Buncombe, Lenoir and Yadkin Counties, we know of no courtroom in North Carolina half the length of which would be beyond the curtilage of any house in the state. The late Professor Albert Coates, creator of the Institute of Government, said: It was an early unwritten maxim of municipal law that "no man's privy should be closer to his neighbor's house than to his own."

[2] In his second assignment of error, defendant argues that the trial court erred by denying his motion to dismiss because there was insufficient evidence that he set the storage building on fire. We disagree.

A motion to dismiss should be denied where there is substantial evidence, whether direct, circumstantial, or both, to support a finding that the offense charged was committed and that the defendant committed it. *State v. Locklear*, 322 N.C. 349, 368 S.E.2d 377 (1988). The evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable

inference to be drawn from the evidence. *Id.* Substantial evidence has been defined as an amount of relevant evidence a reasonable mind might accept as adequate to support a conclusion. *State v. Cox,* 303 N.C. 75, 277 S.E.2d 376 (1981).

The essential elements of N.C.G.S. § 14-62 are: (1) the fire; (2) that the fire was of an incendiary origin; and (3) that the defendant was connected with the crime. *State v. Sheetz,* 46 N.C. App. 641, 265 S.E.2d 914 (1980). As discussed above, the storage building which the defendant burned falls within the list of buildings specified in N.C.G.S. § 14-62. The occurrence of a fire is not in dispute and the testimony of Presnell, when taken in the light most favorable to the State, is sufficient to conclude that the fire was of an incendiary origin.

The defendant contends the evidence is not sufficient to show that the defendant was connected to the fire. However, when the evidence is viewed as a whole, we feel there is substantial circumstantial evidence for the jury to have found him guilty. The defendant was the only person seen in close proximity to the fire after it started. The defendant also failed to warn the nearby residents, lied about his identity, and attempted to flee the scene in a stolen car. "The wicked flee when no man pursueth." Proverbs 28:1; *State v. Irick,* 291 N.C. 480, 231 S.E.2d 833 (1977); *State v. Swift,* 105 N.C. App. 550, 414 S.E.2d 65 (1992).

The facts of this case are substantially similar to *State v. Clark,* 90 N.C. App. 489, 369 S.E.2d 607 (1988), where this Court held that even though the evidence was entirely circumstantial, that it was still sufficient to connect the defendant with the fire. Therefore, based on the circumstantial evidence and the fact that the fire was not accidental, it was proper for the trial court to have denied defendant's motion to dismiss.

We hold defendant had a fair trial free from prejudicial error.

No error.

Chief Judge ARNOLD and Judge COZORT concur.