STATE OF NORTH CAROLINA v. BOBBY RAY BLACK

No. 65

(Filed 9 May 1973)

1. Criminal Law § 86— impeachment of defendant — collateral matters — no error

There was no prejudicial error in questioning by the solicitor for the purpose of impeachment with respect to the collateral matters of defendant's involvement in a knifing, a beating and threats made to someone at a carpet company where defendant admitted the knifing and gave his version of the incident but denied the beating and the threats.

2. Criminal Law § 86— impeachment of defendant — improper conduct — no error

It is permissible for the purpose of impeachment to cross-examine a defendant in a criminal case by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct, since such questions relate to matters within the knowledge of the witness.

State v. Black

3. **Criminal Law § 163— misstatement of contention in charge — failure to object — no prejudice**

  The trial judge's instruction on "heat of passion," even if it was a misstatement of defendant's contention, was not so prejudicial as to warrant a new trial where defendant did not object to the instruction at the time it was given and where the charge was otherwise free from error.

4. **Criminal Law § 161— failure to object to form of sentence — consideration on appeal**

  Though defendant did not object to the form of the sentence, his appeal itself constitutes an exception to the judgment and presents the case for review for error appearing on the face of the record.

5. **Criminal Law § 139— sentence of imprisonment — failure to specify minimum term — error**

  Where the record shows that judgment of imprisonment was entered by the trial court for a term not to exceed seven years, the case is remanded for imposition of a minimum sentence. G.S. 148-42.

APPEAL by defendant from *McLean, J.*, at the 4 September 1972 Session of GASTON Superior Court, transferred for initial appellate review by the Supreme Court by order dated 26 March 1973, entered pursuant to G.S. 7A-31(b)(4).

Defendant was charged in a bill of indictment, proper in form, with the murder of William Hayes Wilson. Defendant entered a plea of not guilty, and the solicitor announced in open court that he would seek a verdict of guilty of murder in the second degree or manslaughter as the evidence might warrant.

The State offered evidence which tended to show: At approximately 4 a.m. on Sunday, 20 February 1972, the defendant, Bobby Ray Black, came into the West End Grill, a restaurant owned by Elmore Bryant and the deceased, William H. Wilson, in Gastonia, North Carolina. The deceased had been drinking heavily and after defendant arrived, deceased sent Bryant and an individual named Charlie Brown to purchase a pint of vodka for the defendant. When they returned, defendant sat with Bryant and Brown drinking and talking for approximately forty-five minutes. Around 5 a.m. the deceased, who had been shooting pool with his son, announced that he was closing up. At that point defendant fired a shot into the ceiling from a .38 caliber pistol which he brought with him to the Grill. The deceased told him to stop shooting because he was scaring his customers away.

Defendant then put the gun behind his coat. About two minutes later, defendant pulled the gun out and shot the deceased twice, once in the right forearm and once in the chest. The deceased fell shattering a pool cue which he was leaning on at the time he was shot. Following the shooting, Bryant, deceased's partner, and Donald Bridges, a friend of the deceased, grabbed defendant and took his gun away from him. While doing so, Bridges struck defendant with a stool and hit him several times on the ribs and arms. Bridges took the gun outside the building and threw it in the direction of Biggerstaff Furniture Store located nearby. Defendant then ran out of the Grill.

A medical expert testified that William H. Wilson died as a result of a gunshot wound which ruptured the innominate vein, a large blood vessel near the lung. A firearms identification expert testified that a bullet recovered from the scene of the incident was fired by the .38 caliber Colt special which was found near Biggerstaff Furniture Store.

Defendant testified in his own behalf and offered other evidence, including the testimony of several witnesses, which tended to show: On the night in question the defendant received a telephone call from the deceased requesting that he come to the West End Grill to discuss some business. Defendant, who operated a private club across the highway from deceased's place of business, closed his club and went to deceased's Grill. Defendant had some five hundred dollars in cash and was carrying a .38 caliber Colt special pistol for protection. When he arrived at the Grill, deceased offered him a drink but the defendant said that he did not drink bourbon, which was all the deceased had at the time. The deceased then sent Bryant out to get some gin or vodka. After Bryant returned with some vodka, defendant, deceased, and some other individuals sat in a booth drinking and talking. Sometime later the deceased said, "I believe I will get up and shoot pool with my boy." For about ten or fifteen minutes the defendant continued to sit and talk. Then he went up to the area where the pool table was located. About thirty minutes later the deceased asked the defendant to back his son financially in a pool game. The defendant said, "I'm not backing anybody. Just shoot for fun." He started to turn away when the deceased struck the defendant on the head and neck with the large end of a pool cue. The force of the blow was such that the pool cue shattered and slid

across the floor. Defendant was knocked to the floor and fired one shot at the deceased who was only a few feet away. After the defendant fired the shot, he was badly beaten by friends of the deceased. Finally he escaped, ran from the building, and hid until the police arrived.

The defendant also offered evidence that the deceased was a large, strong man with the reputation of being a dangerous and violent man when drinking. Additionally, there was evidence of uncommunicated threats by the deceased against the defendant. In fact deceased told one witness if he ever got defendant in "my place of business, there'll be some slow riding and sad singing."

The jury returned a verdict of guilty of voluntary manslaughter. Defendant was sentenced to a term of imprisonment not to exceed seven years. From this sentence the defendant appealed to the North Carolina Court of Appeals.

*Attorney General Robert Morgan and Assistant Attorney General Raymond W. Dew, Jr., for the State.*

*Frank Patton Cooke for defendant appellant.*

MOORE, Justice.

Defendant brings forward two assignments of error. The first raises the question whether the trial judge committed prejudicial error in permitting the solicitor, over the defendant's objections and motions for mistrial, to propound questions to the defendant relating to his alleged assaults on other persons on other occasions not related to this case.

This assignment is based upon the following questions asked by Solicitor Morris while cross-examining defendant:

"Q. And you didn't tell Bill Wilson you had a pistol loaded back there did you?

A. No.

Q. You stayed in his business a couple of hours with that pistol, didn't you?

A. No.

Q. And you went there to kill him?

A. No.

Q. Just like Ross Brackett—you cut him. . .

OBJECTION

. . . from ear to ear, didn't you?

A. No, sir.

OVERRULED

MR. COOKE: Motion for a mistrial, if the court please.

Q. Do you deny that on December 16, 1951, you took a pocket knife and cut Ross Brackett?

ORJECTION AND MOTION FOR MISTRIAL

COURT: Do you want to be heard?

MR. COOKE: Yes, sir.

COURT: Members of the jury, step out to your room.

JURY OUT

MR. COOKE: [Argument on motion.]

COURT: OVERRULED; MOTION FOR MISTRIAL DENIED. Bring the jury back in.

MR. COOKE: Judge, he asked him if he cut him from ear to ear.

COURT: OBJECTION OVERRULED.

JURY IN

Q. I'll ask you again, didn't you on December 16, 1951, cut Ross Brackett with a knife in a violent manner?

OBJECTION AND MOTION FOR MISTRIAL.

COURT: OVERRULED; MOTION DENIED.

A. I jobbed him. He had me down on the floor—there was three of them had me down and I stuck it right in there and that was it.

MOTION FOR MISTRIAL; DENIED.

Q. I'll ask you if you didn't beat Mr. Ted Brady of 29 Maple Street in Banlo down to the floor?

State v. Black

OBJECTION AND MOTION FOR MISTRIAL; OVERRULED.

A. No, sir. I don't know anything about that.

Q. I'll ask you if your place of business out on West Franklin Boulevard is not next to Ellis-Bowen Carpet Company?

A. Yes, it is.

Q. And I'll ask you if the two people that run that are not Don Ellis and Bobby Bowen?

A. Yes, it is.

Q. I'll ask you if within the last month you haven't been over there with them and threatened to put a cap in them?

OBJECTION SUSTAINED.

A. No, I haven't.

MOTION FOR MISTRIAL: DENIED; EXCEPTION."

Defendant contends that the questions asked were more in the nature of testimony and arguments, were designed solely to paint the defendant as the aggressor and to damage his character by insinuation, and that such questions under *State v. Phillips*, 240 N.C. 516, 82 S.E. 2d 762 (1954), were improper. In *Phillips* the solicitor asked seventeen questions insinuating various wrongdoings of the defendant. Objections to only three questions were sustained, and the defendant answered the remaining fourteen. Furthermore, while the solicitor was asking the defendant in that case questions pertaining to his service as a policeman in Lowell, counsel for the defense appealed to the presiding judge to protect their client against the cross-examination on the ground that it was tantamount to the solicitor's testifying. The solicitor made this instant retort in the presence of the jury: "I'm a pretty good witness. You know I lived at Lowell." Under these circumstances this Court held that the solicitor had violated the rules of practice governing cross-examination to such an extent as to deprive the defendant of a fair trial.

[1] The present case is factually distinguishable from *Phillips*. Here the solicitor's questions relate to only three occurrences. The first related to defendant's cutting Ross Brackett with a

knife. Defendant answered this question to the effect that he did indeed stab Ross Brackett and then gave his version as to how and why he did so. The next referred to the fact that defendant beat Ted Brady. Defendant denied that he knew anything about this. The last instance referred to threats to someone at Ellis-Bowen Carpet Company. The court sustained defendant's objection to this question, but after the objection was sustained defendant voluntarily answered that he had not threatened anyone. Thus, one question was answered in the affirmative, and the other two were answered in the negative. These questions involved collateral matters. Defendant's negative answers were conclusive and rendered the questions harmless. *State v. Ross,* 275 N.C. 550, 169 S.E. 2d 875 (1969) ; *State v. King,* 224 N.C. 329, 30 S.E. 2d 230 (1944) ; 7 Strong, N. C. Index 2d, Witnesses § 8, p. 701 *et seq.*

[2]   It is permissible for the purpose of impeachment to cross-examine a defendant in a criminal case by asking disparaging questions concerning collateral matters relating to his criminal and degrading conduct, since such questions relate to matters within the knowledge of the witness. Such questions may cover a wide range and are permissible within the discretion of the court. *State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972) ; *State v. Williams,* 279 N.C. 663, 185 S.E. 2d 174 (1971).

As stated by Justice Higgins in *State v. Ross, supra:*

" . . . The trial judge hears all witnesses and observes their demeanor as they testify. He knows the background of the case and is thus in a favorable position to control the scope of the cross-examination. The appellate court reviews a cold record. For this reason, the trial court, because of its favored position, should have wide discretion in the control of the trial. Its rulings should not be disturbed except when prejudicial error is disclosed. *State v. Sheffield,* 251 N.C. 309, 111 S.E. 2d 195; *State v. Stone,* 226 N.C. 97, 36 S.E. 2d 704; *State v. Wray,* 217 N.C. 167, 7 S.E. 2d 468; *State v. Beal,* 199 N.C. 278, 154 S.E. 604; *State v. Davidson,* 67 N.C. 119; *State v. Patterson,* 24 N.C. 346; Wigmore on Evidence, 3d Ed., 495. . . ."

Here, no prejudicial error is disclosed. This assignment is overruled.

[3]   Defendant's other assignment of error relates to a portion of the judge's charge. The presiding judge charged the jury

that it could return one of three verdicts: Guilty of murder in the second degree, guilty of manslaughter, or not guilty of either offense. The judge correctly defined second degree murder and manslaughter and fully explained defendant's right of self-defense. Defendant did not object to any of the charge except the following.

"The court instructs you, members of the jury, if a person kills in the heat of passion, that may reduce the crime from murder in the second degree to manslaughter. Now, the defendant in this case, members of the jury, has offered evidence tending to show and contends that it does show that he was struck across the shoulder and head with a cue stick and that that produced in him a sudden passion; and the court instructs you that to strike a man across the shoulder with a cue stick would be sufficient provocation to produce in the mind of a man of fair average disposition a sudden passion, and the law so recognizes it, which amounts to an assault upon the defendant and that that produced in his mind a sudden passion and that while this was on him and before he had time to cool, that he pulled the gun and fired the shot. The court instructs you that under those circumstances, if you are so satisfied, the defendant could be guilty of no more than manslaughter, if guilty at all. Under such cases, passion or anger so aroused is held to displace malice.

\*        \*        \*

"The defendant contends, however, members of the jury, that he is not guilty of manslaughter. He says that while he may have satisfied you that he was struck with the cue stick and became in a passionate mood, that he was actually fighting in his own proper self-defense. He says and contends that when Wilson struck him with the cue stick that he then was on the defensive to protect himself from death or serious bodily harm and that whatever you may determine that took place and what he did was done in his own proper self-defense."

Defendant contends that the presiding judge violated G.S. 1-180 by erroneously instructing the jury that it was the defendant's contention that he was struck about the shoulder and head with a cue stick, that this produced in him a sudden passion, and before he had time to cool he pulled his gun and

fired the shot. Defendant says that he made no such contention. To the contrary, he contends that immediately upon being struck by the cue stick he pulled his gun and fired, not because of anger or passion suddenly aroused but to save his own life and prevent Wilson from beating him to death or severely injuring him.

Defendant did not object to the statement of this contention at the time. Since the argument of the attorney for defendant is not brought forward in the record, we do not know what contention might have been made by defendant's attorney to the jury. Moreover, an examination of the record discloses evidence from which inferences related by the court as a contention of defendant could fairly and logically be drawn by the jury. A statement of a valid contention based on competent evidence is not error. *State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1969) ; *State v. Ford,* 266 N.C. 743, 147 S.E. 2d 198 (1966).

" . . . Furthermore, it is the general rule that objections to the charge in reviewing the evidence and stating the contentions of the parties must be made before the jury retires so as to afford the trial judge an opportunity for correction; otherwise they are deemed to have been waived and will not be considered on appeal. *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469; *State v. Butler,* 269 N.C. 733, 153 S.E. 2d 477; *State v. Case,* 253 N.C. 130, 116 S.E. 2d 429; *State v. Rhodes,* 252 N.C. 438, 113 S.E. 2d 917; *State v. Holder,* 252 N.C. 121, 113 S.E. 2d 15; *State v. Shumaker,* 251 N.C. 678, 111 S.E. 2d 878; *State v. Grundler,* 251 N.C. 177, 111 S.E. 2d 1; *State v. Moore,* 247 N.C. 368, 101 S.E. 2d 26; *State v. Saunders,* 245 N.C. 338, 95 S.E. 2d 876." *State v. Virgil, supra.*

Conceding *arguendo* that the statement as to this contention was error, we fail to see how defendant could be prejudiced thereby.

The court's instruction on "heat of passion" gave the jury a theory on which they could reduce defendant's offense from second degree murder to manslaughter, a result favorable to defendant. In addition, the concluding paragraph of the charge clearly stated that even if the jury found that the defendant fired the fatal shot while in the heat of passion, they should acquit the defendant if they found he shot the deceased in his own self-defense.

---

State v. Black

---

In a charge otherwise free from error, the misstatement of a contention, to which defendant did not object at the time, is not such prejudicial error as to warrant a new trial.

[4]  After the jury returned the verdict, the judge imposed the following sentence:

> "It is the judgment of the court that the defendant be confined in the common jail of Gaston County *not to exceed seven years* to be assigned to work under the supervision of the State Department of Corrections as provided by law." (Emphasis added.)

Defendant did not object to the form of the sentence. However, the appeal itself constitutes an exception to the judgment and presents the case for review for error appearing on the face of the record, even in the absence of any proper exception or assignment of error. *State v. Elliott*, 269 N.C. 683, 153 S.E. 2d 330 (1967); 3 Strong, N. C. Index 2d, Criminal Law § 161, p. 112.

[5]  The learned judge apparently intended to enter an indeterminate sentence under G.S. 148-42, which provides in part:

> "The several judges of the superior court are authorized in their discretion in sentencing prisoners to imprisonment to commit the prisoner to the custody of the Commissioner of Correction for a minimum and maximum term."

As stated in 21 Am. Jur. 2d, Criminal Law § 540, p. 519:

> "[U]nder an indeterminate sentence law, a sentence cannot be for a definite term of imprisonment. It must be for not less than a specified minimum period and not more than a specified maximum period. There must be a difference between the periods, and a sentence fixing identical minimum and maximum terms of imprisonment is invalid."

G.S. 148-42 further provides in part:

> "At any time after the prisoner has served the minimum term less earned allowances for good behavior, the Commissioner is authorized to discharge such person unconditionally or release him from confinement under conditions prescribed by the Commissioner."

Consequently, it is important to defendant that the judgment fix a minimum as well as a maximum sentence. It may well be that the trial judge in imposing sentence fixed a minimum as well as a maximum of seven years. However, the record does not so show, and we are bound by the record. *Rogers v. Rogers,* 265 N.C. 386, 144 S.E. 2d 48 (1965); *Redd v. Mecklenburg Nurseries,* 241 N.C. 385, 85 S.E. 2d 311 (1954).

We find no error in the trial but remand the case to the Superior Court of Gaston County for entry of a proper judgment on the verdict.

Remanded for judgment.