ELMORE, Judge.
 

 *276
 
 Defendant John Edward Heelan appeals from judgments entered after a jury found him guilty of taking or attempting to take indecent liberties with a child, and of solicitation of a child by computer. The undisputed trial evidence showed that defendant posted a Craigslist advertisement seeking female companionship; an adult police officer posing as a fourteen-year-old girl named "Brittany Duncan" responded to the ad; defendant and "Brittany" exchanged over 100 messages over a
 
 *277
 
 period of fifteen days, during which
 
 *108
 
 defendant sent her numerous sexually explicit messages and formulated a plan for them to meet up at a public place in order to later have sex; and when defendant arrived at the location to carry out the plan, he was met by police and arrested. Defendant's trial defense was that he did not believe Brittany to be an actual minor, but rather an adult female he was role-playing with to help her live out her sexual fantasy of pretending to be an underage female in sexual pursuit of an older man. The jury found defendant guilty as charged.
 

 On appeal, defendant argues the trial court erred by (1) denying his motions to quash or dismiss the indecent-liberties indictment because "Brittany Duncan" was not an actual child victim, as required to sustain a charge and conviction for indecent liberties with a child; (2) denying his motions to dismiss both charges for insufficiency of the evidence because the State's evidence proved Brittany was not an actual child, and it failed to present substantial evidence that defendant believed her to be an actual child; (3) allowing the State, over objection, to question him about his alleged prior sexual assault of his then-minor daughter because the State impermissibly repackaged this Rule 404(b) sexual misconduct evidence as impeachment evidence; and (4) ordering that he enroll in satellite-based monitoring ("SBM") because its findings were insufficient to support its conclusion that defendant required the highest level of supervision and monitoring as necessary to impose SBM. We hold defendant received a fair trial, free of prejudicial error, but reverse the SBM order.
 

 I. Background
 

 On 28 November 2016, defendant was indicted for taking indecent liberties with a child, in violation of
 
 N.C. Gen. Stat. § 14-202.1
 
 , and for solicitation of a child by computer and appearing, in violation of
 
 N.C. Gen. Stat. § 14-202.3
 
 . The undisputed trial evidence showed the following facts.
 

 On 29 January 2016, defendant posted in Craigslist's "casual encounters" subsection an advertisement entitled, "lick n stick - m4w." In the ad, defendant wrote that he was a "$$ Generous $$ older swm [single white male]" seeking a female "24 or younger" to engage in cunnilingus and vaginal sex. That same day, Detective Jason Reid of the Boone Police Department, posing as a fictitious fourteen-year-old female named "Brittany Duncan," responded by email to defendant's post. Over the course of several messages between defendant and "Brittany" from 29 January until 12 February 2016, Brittany twice directly disclosed
 
 *278
 
 she was only fourteen years old and made numerous references implying she was a minor who lived under close maternal supervision, and defendant sent multiple explicit messages to Brittany in sexual pursuit of her, and repeatedly encouraged Brittany not to raise her mother's suspicions about them communicating. Additionally, at defendant's request, Brittany sent him two images purportedly depicting herself, which actually depicted a twenty-one-year-old former police department intern.
 

 The 100-plus messages between defendant and Brittany culminated in their plan to meet up at 10:00 a.m. on 12 February 2016 at the Panera Bread restaurant in Boone Mall in order to later engage in sex. While driving to Panera Bread, defendant requested Brittany phone him, and a female in her twenties working with the police department called and briefly spoke with him. When defendant arrived at the Panera Bread parking lot, he texted Brittany to meet him outside, but he was instead met by Detective Reid and Special Bureau of Investigation Agent Nathan Anderson. The detectives briefly interviewed defendant while he was sitting in his car and then arrested him for solicitation of a child by computer. Their search of defendant's car revealed that he had arrived to meet up with Brittany in possession of,
 
 inter alia
 
 , two Viagra pills and a tube of KY Jelly. The detectives then transported defendant to the Boone Police Department, where he waived his
 
 Miranda
 
 rights and participated in a forty-five minute videotaped custodial interview with both detectives. Defendant was later charged with taking indecent liberties with a child, and with solicitation of a child by computer and appearing.
 

 Before trial, on 22 May 2017, defendant moved to quash the indecent-liberties indictment. He argued it was legally insufficient because it charged him with taking indecent
 
 *109
 
 liberties with "Brittany Duncan," who was not an actual child but an adult officer posing as one. The trial court denied the motion. Also before trial, at the start of its first day on 12 June 2017, defendant moved
 
 in limine
 
 to exclude anticipatory Rule 404(b) prior sexual misconduct evidence arising from an incident in 2000 in which he allegedly sexually assaulted his then-twelve-year-old daughter. The State replied it did not "anticipate introducing any 404(b) evidence" because defendant's daughter "declined to participate in this process." Accordingly, defendant withdrew his motion. However, as discussed below, the trial court later allowed the State to cross-examine defendant about that alleged incident for impeachment purposes.
 

 At trial, the State introduced a binder of 426 pages of messages exchanged between defendant and Brittany. Detective Reid testified about messaging defendant while posing as Brittany and read several relevant exchanges to the jury. During the exchanges, Brittany twice
 
 *279
 
 disclosed that she was only fourteen years old, and made several references implying she was a minor living under close maternal supervision, who was sexually inexperienced but interested in the sexual companionship of an older man; defendant, in response, described his experience losing his virginity at age fourteen, explained how being with an older man rather than a teenage boy would make Brittany's first sexual experience more enjoyable, sent Brittany several sexually explicit messages and sexually graphic stories or song lyrics, encouraged Brittany not to tell her mother about them communicating, expressed concerns about her mother reading their messages, and formulated a plan for them to meet up for sex without raising Brittany's mother's suspicions. Detective Reid also testified that when he first interviewed defendant briefly at the Panera Bread parking lot, defendant initially denied knowing Brittany but later admitted that he had been communicating with her and knew her to be only fourteen years old.
 

 The State also published to the jury during its case-in-chief defendant's later videotaped custodial interview, during which defendant expressed remorse for his actions and again admitted he believed Brittany to be fourteen years old. During that interview, defendant also stated to the detectives that he "never had sex with a minor" before.
 

 At the close of the State's evidence, defendant moved to dismiss both charges for insufficiency of the evidence. As to the solicitation charge, defendant argued generally that the State failed to present substantial evidence "of each and every element." As to indecent liberties, defendant argued in relevant part the same grounds underlying his prior motion to quash the indictment-that is, the State failed to present evidence that Brittany was an actual minor, and without the element of an actual child victim, a charge for taking indecent liberties with a child cannot be sustained. The trial court denied the motions.
 

 Defendant testified on his own behalf. Despite previously giving notice of the affirmative defense of entrapment, defendant's trial testimony established a fantasy defense-that is, defendant did not have the specific intent to take indecent liberties with a child or to solicit a child by computer because he did not believe Brittany to be an actual minor but rather a role-playing adult living out her sexual fantasy of pretending to be an underage female seeking to sexually engage an older male. Defendant testified that although Brittany had disclosed to him during their emails that she was only fourteen years old, he knew Brittany was not an actual minor when she emailed him the photo of the twenty-one-year-old former police department intern purportedly depicting
 
 *280
 
 herself, a belief that strengthened when Brittany sent the second photo of the same adult female purportedly depicting herself, and again when he heard the adult female's voice purporting to be Brittany, who had phoned him while he was in route to meet up with her at Panera Bread. When defense counsel referred to his videotaped custodial interview statements, defendant explained that he was "willing to say anything to get back home and get out of [the police station]."
 

 On cross-examination, defendant reiterated that after Brittany sent him the first photo of an adult female purportedly depicting herself, he knew Brittany to be an adult but believed she was living out her sexual fantasy of pretending to be an underage girl. When
 
 *110
 
 pressed on the numerous incriminating messages suggesting otherwise, defendant repeatedly replied that he was merely role-playing to help "enforce[ ] the fantasy."
 

 During the middle of cross-examination and outside the presence of the jury, the State informed the trial court and the defense that it intended to use defendant's alleged prior sexual assault of his then-minor daughter to impeach his credibility as a witness. The State explained it intended to reference defendant's prior statement during the videotaped custodial interview that he "never had sex with a minor" and then question him about the alleged prior sexual assault to prove he had previously lied to police. Defense counsel objected, arguing in relevant part that the State before trial agreed not to introduce that evidence for Rule 404(b) sexual misconduct purposes and thus should not be allowed to repackage it to the jury as impeachment evidence. The trial court concluded defendant's pretrial motion to exclude was for Rule 404(b) purposes, not credibility purposes, and ruled it would allow the questioning solely for impeachment. When the State attempted to impeach defendant's credibility by referencing his prior custodial statement and then questioning him about his alleged prior sexual assault of his then-minor daughter, however, defendant flatly denied the allegations, and the State ceased its line of questioning.
 

 At the close of evidence, defendant renewed his motions to dismiss both charges for insufficiency of the evidence, which the trial court denied. After the trial court charged the jury on taking indecent liberties with a child and on child solicitation by computer, the jury during its deliberations sent a note to the trial court asking whether someone can be found guilty of taking or attempting to take indecent liberties with a child if no actual child victim existed. In response to the jury's question, and over defendant's objection, the trial court instructed the jury on the criminal liability theory of attempt.
 

 *281
 
 On 14 June 2017, the jury found defendant guilty of both charges. The trial court entered judgments imposing a thirteen to twenty-five month prison sentence for the solicitation conviction, and a consecutive prison sentence of sixteen to twenty-nine months for the indecent-liberties conviction. Additionally, the trial court ordered that, defendant upon his release from prison, be enrolled in SBM for a period of ten years. Defendant appeals.
 

 II. Analysis
 

 On appeal, defendant contends the trial court erred by (1) denying his motions to quash or dismiss the indecent-liberties indictment on the ground that a charge or conviction for indecent liberties with a child cannot be sustained without an actual child victim; (2) denying his motions to dismiss both charges for insufficiency of the evidence on the grounds that the State failed to present any evidence of the indecent-liberties element of an actual minor victim, and failed to present substantial evidence of the solicitation element that defendant reasonably believed Brittany to be an actual minor; (3) permitting the State, over his objection, to cross-examine him about the alleged prior sexual assault of his then-minor daughter on the grounds that the State impermissibly repackaged its Rule 404(b) evidence of sexual misconduct as impeachment evidence; and (4) ordering that he enroll in SBM because the trial court's findings were insufficient to support the order.
 

 A. Motions to Quash or Dismiss the Indecent-Liberties Charge
 

 Defendant first asserts the trial court erred by denying his pretrial motion to quash the indecent-liberties indictment and his later trial motion to dismiss that charge. He argues the charge alleged, and the trial evidence proved, Brittany Duncan was not an actual child, and "[w]ithout an actual child, there can be no taking indecent liberties with a child." We disagree.
 

 1. Review Standard
 

 We review statutory interpretation issues
 
 de novo
 
 .
 
 See
 

 State v. Davis
 
 ,
 
 368 N.C. 794
 
 , 797,
 
 785 S.E.2d 312
 
 , 315 (2016). "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain meaning."
 

 *111
 

 Burgess v. Your House of Raleigh, Inc.
 
 ,
 
 326 N.C. 205
 
 , 209,
 
 388 S.E.2d 134
 
 , 136 (1990) (citation omitted). "[I]t is our duty to give effect to the words actually used in a statute and not to delete words used or to insert words not used."
 
 Lunsford v. Mills
 
 ,
 
 367 N.C. 618
 
 , 623,
 
 766 S.E.2d 297
 
 , 301 (2014) (citations omitted). Additionally, "[t]he Legislature is presumed
 
 *282
 
 to know the existing law and to legislate with reference to it."
 
 State v. Davis
 
 ,
 
 198 N.C. App. 443
 
 , 451-52,
 
 680 S.E.2d 239
 
 , 246 (2009) (quoting
 
 State v. S. Ry. Co.
 
 ,
 
 145 N.C. 495
 
 , 542,
 
 59 S.E. 570
 
 , 587 (1907) ).
 

 2. Discussion
 

 Defendant contends the plain language and statutory structure of
 
 N.C. Gen. Stat. § 14-202.1
 
 , our taking indecent-liberties-with-a-child statute; in conjunction with an
 
 in pari materia
 
 interpretation of
 
 N.C. Gen. Stat. § 14-202.3
 
 , our child-solicitation-by-computer statute; as well as a consideration of the legislative histories of both statutes, "compel the conclusion that the General Assembly intended § 14-202.1 to require that a defendant take or attempt to take an indecent liberty with an actual child in order ... to be convicted."
 

 Our indecent-liberties statute provides in pertinent part:
 

 (a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he ...:
 

 (1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire[.]
 

 N.C. Gen. Stat. § 14-202.1
 
 (a), - (a)(1) (2017). North Carolina courts have interpreted the elements of taking indecent liberties with a child as follows:
 

 "(1) the defendant was at least 16 years of age, (2) he was five years older than his victim, (3) he willfully took or attempted to take an indecent liberty with the victim, (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred, and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire."
 

 State v. Cowan
 
 ,
 
 207 N.C. App. 192
 
 , 201,
 
 700 S.E.2d 239
 
 , 245 (2010) (quoting
 
 State v. Rhodes
 
 ,
 
 321 N.C. 102
 
 , 104-05,
 
 361 S.E.2d 578
 
 , 580 (1987) ).
 

 However, a defendant "may be convicted of an
 
 attempt
 
 to commit [a] crime[,]" when he or she "has the specific intent to commit [the] crime and under the circumstances as he [or she] reasonably saw them did the acts necessary to consummate the substantive offense, but, because of facts unknown to him [or her] essential elements of the substantive offense were lacking[.]"
 

 *283
 

 State v. Hageman
 
 ,
 
 307 N.C. 1
 
 , 13,
 
 296 S.E.2d 433
 
 , 441 (1982) (emphasis added). "The elements of an attempt to commit a crime are: (1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense."
 
 State v. Baker
 
 ,
 
 369 N.C. 586
 
 , 595,
 
 799 S.E.2d 816
 
 , 822 (2017) (internal quotation marks omitted) (quoting
 
 State v. Coble
 
 ,
 
 351 N.C. 448
 
 , 449,
 
 527 S.E.2d 45
 
 , 46 (2000) ).
 

 Here, the indictment charging defendant with taking indecent liberties with a child alleged in relevant part that defendant
 

 did take and attempt to take immoral, improper, and indecent liberties with "Brittany Duncan," the name of the alias used by Detective Jason Reid of the Boone Police Department,
 
 a child the defendant believed to be under the age of 16 years at the time of the offense
 
 , for the purpose of arousing and gratifying sexual desire.
 

 (Emphasis added.) The undisputed trial evidence showed defendant sent numerous sexually explicit messages to "Brittany Duncan," who identified herself to defendant as a fourteen-year-old female, but who was actually an adult undercover officer. The disputed issue at trial was whether defendant actually believed Brittany to be a child or, as he testified in his defense, he believed Brittany to be an adult role-playing her sexual fantasy of pretending to be a child. Although the essential element of the child's age was missing, we conclude the indictment and trial evidence here were sufficient to support a charge and conviction of attempted taking indecent liberties with a child.
 
 Cf.
 

 *112
 

 State v. Ellis
 
 ,
 
 188 N.C. App. 820
 
 , 825-26,
 
 657 S.E.2d 51
 
 , 54-55 (2008) (relying on
 
 Hageman
 
 's instruction on the criminal liability theory of attempt to opine in dicta that a defendant may be convicted of attempted taking indecent liberties with a child based upon inappropriate messaging with an adult undercover officer posing as a child).
 

 Given
 
 N.C. Gen. Stat. § 14-202.1
 
 's unambiguous inclusion of "attempt[ ]" within the definition of the crime, we need not resort to other canons of judicial interpretation. Including "attempt" indicates the General Assembly envisioned something less than the actual taking of indecent liberties with a child may sustain a conviction, and underscores legislative intent to impose criminal liability regardless of whether a defendant succeeds in committing the crime.
 
 Cf.
 

 State v. Curry
 
 ,
 
 203 N.C. App. 375
 
 , 393,
 
 692 S.E.2d 129
 
 , 142 (2010) ("The crime of robbery with a dangerous weapon, as defined by
 
 N.C. Gen. Stat. § 14-87
 
 , includes within the definition of the crime an attempt to commit the crime; that is, the State may present evidence that defendant either completed the
 
 *284
 
 crime or that he attempted the crime, but either way the evidence would be sufficient that defendant may be found guilty of robbery with a dangerous weapon." (citing
 
 N.C. Gen. Stat. § 14-87
 
 (2005) ) ).
 

 Accordingly, we hold that an actual child victim is not required to sustain a charge or an attempt conviction under
 
 N.C. Gen. Stat. § 14-202.1
 
 . Therefore, the trial court properly denied the motions to quash or dismiss the charge on this basis.
 

 B. Motions to Dismiss Both Charges for Insufficiency of Evidence
 

 Defendant next contends the trial court erred by denying his motions to dismiss both charges for insufficient evidence. We disagree.
 

 1. Review Standard
 

 Our review standard of a trial court's denial of a motion to dismiss a criminal charge for insufficient evidence is
 
 de novo
 
 .
 
 State v. Barnett
 
 ,
 
 368 N.C. 710
 
 , 713,
 
 782 S.E.2d 885
 
 , 888 (2016) (citing
 
 State v. Earnhardt
 
 ,
 
 307 N.C. 62
 
 , 66,
 
 296 S.E.2d 649
 
 , 652 (1982) ). Our review scope is "whether the State presented substantial evidence in support of [the challenged] element of the charged offense."
 
 State v. Jones
 
 ,
 
 367 N.C. 299
 
 , 304-05,
 
 758 S.E.2d 345
 
 , 349 (2014) (quoting
 
 State v. Hunt
 
 ,
 
 365 N.C. 432
 
 , 436,
 
 722 S.E.2d 484
 
 , 488 (2012) ). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion."
 
 Id
 
 . "[A]ll evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence."
 
 Id
 
 . "If there is substantial evidence-whether direct, circumstantial, or both-to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied."
 

 Id.
 

 (brackets omitted).
 

 2. Discussion
 

 Defendant argues the indecent-liberties charge should have been dismissed because the State failed to present any evidence to support the element of an actual child victim, and the solicitation charge should have been dismissed because the State failed to present substantial evidence of the element that defendant reasonably believed he was soliciting an actual child. Having concluded an actual child victim is not required to sustain a charge or attempt conviction of taking indecent liberties with a child, the issue presented for both charges is whether the State presented substantial evidence that defendant believed Brittany to be an underage minor.
 

 *285
 
 At trial, the State introduced a binder of 426 pages of emails between defendant and Brittany, a person who directly identified herself twice as a fourteen-year-old minor, and who made numerous references implying she was a minor. For example, Brittany reference to being homeschooled, doing homework, living with her mother, not being allowed out of her house without her mother's permission, being unable to drive, engaging in activities common for minors, her friends discussing relationship experiences with
 
 *113
 
 teenage boys, and her being embarrassed that she only ever kissed a boy. In response, defendant encouraged Brittany to keep up with her homework, expressed concern about her mother reading their messages, gave Brittany advice on ways not to raise her mother's suspicions about them communicating, formulated a plan for how they could meet up for a sexual encounter without Brittany's mother knowing, described his experience losing his virginity at age fourteen, explained how being with an older man like himself would be more enjoyable for Brittany's first sexual experience than being with a teenage boy, described to Brittany what she could expect during her first sexual encounter, suggested meeting in public since "father-daughter" time would not raise suspicions, and expressed to Brittany how "it's real cool to feel a young girl squiggle and squirm when you hit all the right spots[.]" In sum, these numerous communications portrayed Brittany as a fourteen-year-old girl, under close maternal supervision, and nothing about them indicates defendant believed otherwise or that Brittany was engaging in a role-playing fantasy. Several of these relevant and graphic exchanges were read to the jury, which we decline to repeat.
 

 Moreover, Detective Reid testified that when he first approached defendant at the Panera Bread parking lot, although defendant initially denied knowing Brittany, he eventually admitted that "he, in fact, did know that Brittany was a 14-year-old girl." Additionally, during his later videotaped custodial interview that was published to the jury, the following relevant exchanges occurred:
 

 Q: ... The bottom line ... is that you knew [Brittany] was fourteen, and she said okay and you tried to blow her off, but you kept talking to her.... [D]id you not process that and think there was something wrong with that?
 

 A: Yes I did.
 

 Q: What did you think?
 

 A: I thought I was making a mistake but I was enjoying the companionship.
 

 *286
 
 ....
 

 Q: Well understand something, you were corresponding with a 14 year old girl. Okay.
 

 A: I understand.
 

 Viewed in the light most favorable to the State, it presented substantial evidence that defendant believed Brittany to be a minor, with whom he was communicating with and sexually pursuing. Accordingly, the trial court properly denied defendant's motion to dismiss both charges for insufficiency of the evidence.
 

 C. Allowing the State to Impeach Defendant during Cross-Examination
 

 Defendant next contends the trial court erred by allowing the prosecutor, over his objection, to cross-examine him for impeachment purposes about the alleged prior sexual assault of his then-minor daughter. He argues the State impermissibly repackaged its Rule 404(b) prior-sexual-misconduct evidence as impeachment evidence and, because the State introduced during its case-in-chief the statement it sought to impeach, our Rules of Evidence prohibited it from doing so.
 

 Before trial, defendant filed a motion
 
 in limine
 
 seeking to exclude anticipatory Rule 404(b) prior sexual misconduct evidence concerning an incident in 2000 in which he was charged with sexually molesting his then twelve-year-old daughter, a charge that was later dismissed. The State replied that it would not present that evidence for Rule 404(b) purposes because defendant's daughter declined to testify. However, during defendant's cross-examination, the State disclosed it intended to use that evidence to impeach his credibility as a witness, since defendant stated during the videotaped custodial interview it had previously published to the jury during its case-in-chief that he "never had sex with a minor." Over defendant's objection, the trial court ruled that it would allow the questioning solely for credibility purposes.
 

 During defendant's cross-examination, after the prosecutor referenced his prior videotaped custodial statement, the following relevant exchange occurred:
 

 *114
 
 Q. [Your daughter] spent New Year's Eve with you, December 31st, 1999; did she not?
 

 A. That is correct.
 

 Q. And on that New Year's Eve she was 12 years old; is that right?
 

 *287
 
 A. She would've been 12.
 

 ....
 

 Q. And so she at that time was two years younger than Brittany was in these messages.
 

 A. That is correct.
 

 Q. And you went into her room on New Year's Eve and you made her perform oral sex on you, didn't you?
 

 [DEFENSE]: Objection.
 

 A. That's incorrect.
 

 THE COURT: Overruled.
 

 Q. ( [STATE] ) And you also digitally penetrated your 12-year-old daughter?
 

 [DEFENSE]: Objection.
 

 A. That is incorrect.
 

 THE COURT: Overruled.
 

 Assuming,
 
 arguendo
 
 , the trial court erred by allowing this prosecutorial questioning for impeachment purposes, "questions asked by an attorney are not evidence."
 
 State v. Taylor
 
 ,
 
 344 N.C. 31
 
 , 41,
 
 473 S.E.2d 596
 
 , 602 (1996). Additionally, "a question in which counsel assumes or insinuates a fact not in evidence, and which receives a negative answer, is not evidence of any kind."
 
 State v. Richardson
 
 ,
 
 226 N.C. App. 292
 
 , 303,
 
 741 S.E.2d 434
 
 , 442 (2013) (quoting
 
 State v. Smith
 
 ,
 
 289 N.C. 143
 
 , 157,
 
 221 S.E.2d 247
 
 , 255 (1976) ). No evidence was generated by the challenged questioning other than defendant's conclusive denials of the alleged prior sexual misconduct, which rendered the challenged prosecutorial questioning harmless.
 
 See
 

 State v. McClintick
 
 ,
 
 315 N.C. 649
 
 , 659,
 
 340 S.E.2d 41
 
 , 47 (1986) (finding prosecutorial questioning harmless where "the [S]tate's query into each matter ended upon the defendant's flat denial" and the "defendant's denials were conclusive" (citations omitted) );
 
 State v. Black
 
 ,
 
 283 N.C. 344
 
 , 350,
 
 196 S.E.2d 225
 
 , 229 (1973) ("Defendant's negative answers were conclusive and rendered the questions harmless." (citations omitted) );
 
 see also
 

 State v. Davis
 
 ,
 
 349 N.C. 1
 
 , 40,
 
 506 S.E.2d 455
 
 , 476 (1998) ("No improper testimony was admitted, and the jurors heard defendant's sister deny any knowledge of such conversation."). While we do not go so far as to hold that reversible error could never occur from improper questioning on cross-examination of a criminal
 
 *288
 
 defendant where the defendant denies the allegations contained in the questions, based on the facts of this case we conclude no prejudicial error occurred. Accordingly, we overrule this argument.
 

 D. SBM Order
 

 Finally, defendant argues, and the State concedes, the trial court reversibly erred by ordering that he enroll in SBM. The Division of Adult Correction's ("DOC") STATIC-99R risk assessment of "Moderate-Low," without additional findings by the trial court, was insufficient to support the trial court's conclusion that defendant "requires the highest possible level of supervision and monitoring" necessary to impose SBM.
 
 See
 

 State v. Kilby
 
 ,
 
 198 N.C. App. 363
 
 , 370,
 
 679 S.E.2d 430
 
 , 434 (2009) ("The findings of fact are insufficient to support the trial court's conclusion that 'defendant requires the highest possible level of supervision and monitoring' based upon a 'moderate' risk assessment from the DOC."). Because the State failed to present evidence at sentencing to support findings that would support this determination, we reverse the SBM order.
 
 Id.
 
 at 370-71,
 
 679 S.E.2d at 434
 
 .
 

 III. Conclusion
 

 Because we conclude that an actual child victim is not necessary to sustain a charge or conviction of attempted taking indecent liberties with a child in violation of
 
 N.C. Gen. Stat. § 14-202.1
 
 , we hold the trial court properly denied defendant's motions to quash or dismiss the indecent-liberties charge on that basis. Viewed in the light most favorable to the State, it presented substantial evidence of the challenged elements of both charges, and thus the trial court properly denied defendant's motions to dismiss those charges for insufficiency of the evidence. Assuming,
 
 arguendo
 
 , the trial court erred by allowing
 
 *115
 
 the State to cross-examine defendant for impeachment purposes about the alleged prior sexual assault of his then-minor daughter, defendant's conclusive denials that the incident ever occurred rendered that questioning harmless. Accordingly, we hold defendant received a fair trial, free of prejudicial error. Finally, as the State concedes, because the trial court's findings were inadequate to support its order imposing SBM, we reverse the SBM order.
 

 NO PREJUDICIAL TRIAL ERROR; SBM ORDER REVERSED.
 

 Judges DILLON and DAVIS concur.